CASE 43—PETITION ORDINARY—FEBRUARY 15.

# Biesenthall vs. Williams.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. Proof of the laws of Ohio, by the parol testimony of respectable lawyers, who incorporate in their depositions sworn copies from the printed volume of those laws, is sufficient. (5 *B. Mon.*, 448.)   *Sec.* 25, *chap.* 35, *Rev. Stat.*, and the act of *March* 10, 1856 (1 *Rev. Stat.*, 470-1), are cumulative merely.

2. A law of Ohio authorizing a personal judgment against a defendant, upon whom process had been served, by a copy left at his dwelling, when he had absented himself to avoid process, cannot be held invalid here, as between the citizens of that State. (3 *J. J. M.*, 602; 5 *Litt.*, 350.)

3. The jurisdiction of the foreign court being established, the judgment must be received as *prima facie* evidence, at least, that all its mandates were in accordance with the law, and binding on the parties until legally impeached or reversed.

4. An instrument in the following words:

"*Cin.*, Sept. 18, '55.

"*Thomas Williams, Esq.:*

"Please let the bearer have $50.   I will arrange it with you this noon.

"Yours, most obedient,        S. R. BIESENTHALL,"

is an inland bill of exchange and not a covenant, and is barred by the limitation of five years. (*Bouvier Law Dic.*, 176, 177-8; 2 *Dana*, 415.)

J. ROBERTS, for appellant, cited 2 *Rev. Stat.*, *p.* 127; 2 *Dana*, 414; 1 *Rev. Stat.*, 470.

J. G. WILSON, for appellee, cited 4 *Met.*, 113.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The laws of Ohio introduced as evidence in this case, were not only established by the parol evidence of two respectable lawyers, but sworn copies from the printed volume of the laws of the State, published by its authority, were also incorporated as part of their depositions.   But, it is insisted that this does not sufficiently establish the law of Ohio by any recognized rule in this State.

By section 25, chapter 35, 1 Stanton's Revised Statutes, 470, "the printed laws of the United States, or of any State or Territory thereof, which have been or shall be received in the Secretary's office of this State, and which shall have been printed under the authority of the United States, or such State

or Territory, or a copy thereof, when duly certified by the Secretary of State for this Commonwealth, shall be admitted and received as evidence of such laws."

This was but the enactment, substantially, of the previous statute of 1809. (1 *M. & B. Stat.*, 187.) The subsequent act, approved March 10, 1856 (1 *Stant. Rev. Stat.*, 470–1), extends the rule so far as to make such printed volumes and pamphlets *prima facie* evidence, without having first been lodged, in the Secretary's office. But neither of these statutes repeals the common law mode, but are cumulative both as to it and the act of Congress.

In *Chamberlain vs. Maitland* (5 *B. Mon.*, 448) this court held, that the evidence of the notary public was sufficient to establish that there is annually a day of fasting in Massachusetts, and that the banks, and all other places of business, are closed on such days; also, that a copy, proved by him to be an extract from the legislative act of said State, authorizing the protest of a bill of exchange the day previous, when it falls due on such fast day, must be taken as sufficient evidence of the law of that State. After reciting the act of 1809, the court said: " It seems to us such book cannot be entitled to greater credence than the sworn extract before us."

In *Baron de Bode vs. Reginam* (10 *Jur.*, 217) it was held, upon great consideration, by the English court, that a foreign written law may be proved by the parol evidence of a witness learned in the law, without first attempting to obtain a copy of the law itself, because, as the court said, it was regarded as being within that general rule admitting the opinion of skillful and scientific persons on subjects with which they were conversant. (*See note* 2, *sec.* 487, 1 *Greenleaf on Ev.*)

The connection, intercourse, and constitutional ties which bind the States of the American Union together, require some relaxation in the stringency of the common law mode of authenticating or proving foreign laws; and that a printed volume, purporting on its face to contain the laws of a sister State, should be received as *prima facie* evidence of the statute laws of such State, independent of any statutory regulation. (*Sec.* 489, 1 *Greenleaf Ev.*, *and authorities recited.*)

Biesenthall vs. Williams.

Whether tested by common law rules or statutory regulations, the Ohio law must be deemed sufficiently established in this case. This law authorized the court, on a return of the officer that the defendant was served with process by leaving a true copy at his dwelling-house, when he had absented himself to avoid process, and on the attachment of his property, to render a personal judgment, or, otherwise, making this *actual service of process*.

All the necessary preliminary steps, as required by said law, were taken. The defendant was then a resident of Ohio, and the court adjudged personally against him. We are now asked to disregard this adjudication.

The national constitution requires that the same validity be given to this judgment in all other States of the Union as it is entitled to in Ohio. However null such a judgment, rendered on such service, against the citizen of another State, might be, because the legislative enactment of Ohio could not operate extra-territorial, yet as to her own citizens the question is far different.

The right of each State to prescribe the manner and by what legal remedies its own citizens shall seek redress of their wrongs, is sovereign and unlimited, save by that clause of the national constitution prohibiting the States from passing laws which may impair the obligation of contracts. The Legislature of this State, and perhaps of all the States of the Union, have provided for the rendition of personal judgments without personal service of process in some special class of cases. A personal judgment may be rendered in behalf of the Commonwealth on a recognizance upon the return of two notices, and a personal judgment may be rendered in behalf of a private person, in all that class of cases wherein judgment on motion is authorized by law, upon notice executed by leaving a true copy at the defendant's usual place of abode, with a white member of his family over sixteen years of age residing with him, when the defendant is absent.

The power to enact these laws, and to render judgment accordingly, has been so long acquiesced in without remonstrance or resistance by the entire profession and people of

our State, as to indicate their universal assent to its constitutional existence. This court seemingly approved its existence in *Williams vs. Preston*, 3 *J. J. Mar.*, 602. And in *Scott et al. vs. Coleman*, 5 *Litt.*, 350, it held that whilst the general principle of the common law is, that process must be executed else the judgment would be invalid, yet to this rule there were many exceptions by statutory or local regulations ; and as the different State governments " may and do institute such proceedings, it is competent for them to make judgments rendered therein conditionally binding or *conclusively final* or *incontestible*." The effect, however, to be given such judgments in Ohio was not proved further than is to be inferred from the judgment and the presumption to be indulged by law.

In the case recited from 5 *Litt.* it said, after referring to the provision found in the national constitution before alluded to herein, " we therefore conceive the general rule to be, that when the judgment of a sister State is produced, rendered by one of its tribunals, we must presume that tribunal had jurisdiction and authority, and that the act done in pursuance of that authority concludes and binds the parties named therein ; and as to impeaching its full credit, the *onus probandi* lies on him who resists it."

The jurisdiction of the Ohio court is shown by the laws of that State. We must then receive the judgment of the court as at least *prima facie*, if not conclusive, evidence of the law, and that all of its mandates were in accordance therewith, and conclusive and binding on the parties until legally impeached, else reversed by a superior tribunal of that State.

There was no error in admitting the evidence as to the laws of that State, nor in admitting the record, proceedings, and judgment.

A recovery was also had upon the following writing :

" CIN., Sept. 18th, '55.

" *Thomas Williams, Esq.* :

"Please let the bearer have $50 00. I will arrange it with you this noon.

" Yours, most obedient,
" S. R. BIESENTHALL."

To this cause of action the defendant pleaded the statute of limitation, and insists that five years bars it. The plaintiff insists that it is not " a bill of exchange, draft, or order," but a covenant that cannot be barred under fifteen years.

Disregarding what the pleadings may style it, we look to the paper to ascertain its legal character. "A bill of exchange is defined to be an open letter of request from, and order by, one person on another, to pay a sum of money therein mentioned to a third person." (1 *Bouvier Law Dic.*, 176.)

"It is usual, when the drawer of the bill is debtor to the drawee, to insert in the bill these words : ' and put it to my account ; ' but where the drawee, or the person to whom it is directed, is debtor to the drawer, then he inserts these words : ' and put it to your account ; ' but it is altogether unnecessary to insert any of these words.' " (*Ib.*, 177–8.)

Here was an open letter written by Biesenthall, requesting Williams to let a third party, " the bearer," have fifty dollars ; but it is said that the words " I will arrange it with you this noon," contained in it, make a covenant, and changes the legal character of the instrument. This paper, when delivered by Biesenthall to " the bearer," and before it was presented to Williams for his sanction or rejection, and when he had not assented to it, nor was bound by it, still had a legal existence, with its legal obligations and legal character, and upon which the bearer could recover his legal rights. What was it ? It was then clearly not a covenant between Williams and Biesenthall, for Williams had never seen it, nor had in any manner assented to it. These words quoted were not a covenant with the bearer, because they were addressed to Williams, and an assurance to him that, if he lent the fifty dollars to the bearer, the money should be repaid him the same day. At the time Biesenthall delivered it to the bearer, it was neither a covenant with Williams nor the bearer ; and we apprehend these words were of no more legal significance than had he said " and put it to my account," or " charge me," or " I will pay you," and, we presume, were inserted for the mere purpose of assuring the drawee, Williams, that he should not be delayed in the repayment of the money.

The paper being an inland bill of exchange without these words, they did not change its character nor destroy any of its qualities.

In *Early vs. McCart* (2 *Dana*, 415), Early, as indorsee, declared on this writing: "Pay to Alexander and Stockton, or order, $215, and *1 will credit your note* to me for that amount due on 25th inst., value received. August 24, 1833.

"ROBERT MCCART.

"To Mr. JOHN ANDREWS, Sherburn Mills."

This court held the latter words did not change the character or qualities of the writing, but that it was an inland bill of exchange, upon which the indorsee could maintain a suit against the drawer. The promise contained that the drawer would credit the note of drawee, which he then held for the same amount, was not the designation of a particular fund, alone, out of which it should be paid.

This paper, then, being a domestic bill of exchange, cancelled by its being taken up by the drawee, falls within the operation of section 2, article 3, chapter 63, 2 Stanton's Revised Statutes, 127—five years, and not fifteen, being the statutory bar to this character of written instruments. It may be, however, that legal reasons exist why the statute did not begin to run five years previous to the bringing this suit; and this question we leave open for further adjudication.

The letter from Williams to Biesenthall was proved to be in Williams's hand-writing, and, although without date, its statements seem to be pertinent to the issue raised on the answer and cross-suit of Biesenthall, and should, therefore, have been permitted to go to the jury for their consideration and determination whether applicable to the facts in issue; no reason for its rejection has been suggested by counsel; none has been perceived by the court.

For the errors stated the judgment is reversed, with directions for a new trial, and further proceedings not inconsistent herewith.

Judge ROBERTSON does not concur in so much of this opinion as decides that the express stipulation to drawee, in the event of his acceptance, was not a covenant.