## Harrison v. Union Store Company.

(Decided March 8, 1918.)

Appeal from Jefferson Circuit Court
(Common Pleas, Fourth Division).

1.  Bills and Notes—Action by Assignee.—An assignee of a negotiable note for collection only may maintain an action in his own name for recovery on the paper.

2.  Bills and Notes—Detached Undertaking—Carelessness in Delivery. —Where a long printed contract is executed as one agreement, and there is in the body thereof an undertaking which, if detached, forms a regular negotiable note, and this instrument is detached without the knowledge or consent of the maker, in an action by an innocent holder in due course upon the instrument, it is a question of fact for the determination of the jury whether the maker of the paper in preparing or executing it was guilty of negligence or carelessness in delivering the instrument in such form that a corrupt subsequent holder could convert it into negotiable paper by detachment.

3   Bills and Notes—Alteration—Innocent Purchaser for Value.—If the holder of a written contract alter or change it in a material part by detachment, the whole undertaking is rendered unenforceable, unless the maker by his carelessness put it within the easy reach of the subsequent holder to make such alteration or detachment, and the paper in the usual course has come into the hands of an innocent purchaser for value before due.

WILLIAM F. CLARK, JR.; for appellant.

JOHN IRICK and ED C. WURTELE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

A concern styling itself the Puritian Manufacturing Company, Chicago, New York, Winnipeg, and Toronto, entered into a long printed contract with the Union Store

Company, of Beuchel, Kentucky, whereby the Puritian Manufacturing Company, representing itself as an advertising expert and contest manager, agreed to fur: nish the Union Store Company a piano of a given description; together with three hundred articles of jewelry, and to personally supervise and conduct a contest at the store of appellee through which the trade and business of appellee would be greatly increased. In consideration of these things the Puritian Company induced the Union Store Company, by its manager, to execute and deliver to the agent of the Puritian Company a printed contract to which was attached, below a dotted line, the following:

"Chicago, Ill., June 30, 1910.

"For value received the undersigned promises to pay at Chicago, Ill., to the order of the Puritian Mfg. Co.

"Three Hundred Dollars, as follows:

A discount of 5% will $100.  3 months after date.
be allowed if the full
amount of this instrument $100.  4 months after date.
is paid at maturity of first
installment.           $100.  5 months after date.

"P. O. Beuchel, Ky., R. F. D. No. 12.

"Union Store Co.,

"By J. B. Reid, Mgr."

Immediately upon the execution and delivery of the printed contract aforesaid, the obligation attached to it, below the dotted line, was detached and placed with the Johnson-County Savings Bank, Iowa City, Iowa, as collateral to a note executed by the Puritian Manufacturing Company, and by that bank transferred to J. C. Stouffer, who it is alleged furnished the money, and by said Stouffer endorsed and delivered to the plaintiff, C. W. Harrison, for collection only. Harrison instituted this action on the note in the Jefferson circuit court to recover the three hundred dollars of the Union Store Company. The amended petition alleges that Harrison is the holder for collection only. A demurrer interposed to the petition as amended was sustained, and the plaintiff declining to plead further the action was dismissed. The amended petition was not supported until after the answer of defendant had been filed. By its answer the Union Store Company alleged that at the time of the execution of the writing sued on the store

company entered into a contract with the Puritian Manufacturing Company whereby it was to receive a piano and three hundred pieces of jewelry, and in addition the Puritian Company was to put on and conduct an advertising campaign for the benefit of the Union Store Company whereby the trade and business of the store would be increased. There is a lot of printed matter on the back of the contract in small type, and there is in the face of the contract in small type so intermingled with other parts of the printed matter as to be fairly concealed, this expression, "the detachable agreement below." This is printed upon the sheet above the note copied, *supra,* and is intended to give the Puritian Manufacturing Company and its agents authority and opportunity to detach from the contract the promissory note, which is so deftly and carefully concealed in the printed contract. The answer further alleges that the pretended note sued on was fraudulently and without the knowledge or consent of the store company detached from the remainder of the contract. The answer also sets up the entire contract. It is moreover charged that the contract was obtained by fraudulent means and by false and fraudulent representations and that the detaching of the said note was without the consent of the defendant and was done for the purpose of placing the said alleged note in the hands of an innocent person to be sued upon as a *bona fide* holder for value. This last allegation, however, is not as full and complete as it should be to make the plea available.

It is very doubtful from what appears in the record whether the plaintiff, Harrison, or his assignor, occupies the position of a holder for value in due course. There are many indications of fraud and deceit connected with this contract and note. The long printed paper looks quite innocent when examined as one agreement, but it presents quite a different aspect when the note is detached at the dotted line. It is alleged, and no doubt sustained by the facts, that the drummer who obtained this contract from the store company gave no hint that in the writing was cunningly concealed a promissory note, which, when detached and negotiated at a duly constituted bank, would be placed upon the footing of a bill of exchange against which the maker could interpose no equitable defense. So careful were the drafters of this printed contract in the selection of words not calculated to excite the suspicion of the merchant that the

use of the word "note" was studiously avoided and in place thereof is employed the expression "detachable agreement." Had the expression "detachable note," or the broader term "detachable promissory note" found its way into the printed contract the sight thereof, no doubt, would have aroused the suspicion of an otherwise unsuspecting merchant, and unquestionably would have rendered it much more difficult to obtain his signature. It is charged that the note was detached from the remainder of the writing without the knowledge or consent of the store company, and this no doubt is true, although in the middle of the printed page in small type, surrounded and overshadowed by larger type, is skillfully screened the words, "the detachable agreement below." These words, used in the sense which is now attempted to be attributed to them, are not germane to the subject matter expressed in the small type immediately preceding and immediately following the phrase, but so couched and surrounded the camouflage was complete, and the busy merchant whose signature was sought could not easily detect the snare.

Under the expression "the detachable agreement below" are several heavy black lines running entirely across the page. Between two of these lines are these words, "this agreement is subject to the conditions printed on the back hereof." Immediately under this is the following:

"Chicago, Ill., June 30th, 1910.

"Puritian Manufacturing Co.

"Gentlemen:—

"Please ship the undersigned one Krause piano *mahogany* finish, together with the advertising matter and goods described above upon the terms and conditions herein, and no others, all of which I understand and approve.

(Signed) "J. B. Reid, Mgr.

By _____

"Puritian Manufacturing Co.,

"By L. H. Peyton, Salesman.

"Freight station _____ ;

"Express Station _____, State _____."

Next on the page is a dotted line also running entirely across the page. This line, however, is not perforated. Below this line is the promissory note above set forth.

None of the printing on the back of the contract comes
down far enough to interfere with the promissory note.
In other words, the promissory note is blank on the back,
while the balance of the back page is covered with small
printed matter. If the words "detachable agreement be-
low" intermingled with the other small type matter can
be interpreted to mean that the agreement following and
below the phrase was detachable and authorized the
Puritian Manufacturing Company, or its agents, to de-
tach it, then the whole thereof including the order quoted
above should have been detached along with the alleged
promissory note. Clearly the contract as printed and
signed by the Union Store Company was not negotiable,
nor is that part, all taken together, below the expression
"the detachable agreement below." As delivered to the
agent of the Puritian Manufacturing Company the writ-
ing was a non-negotiable instrument. If, as appears to
be the fact, no mention was made of detaching the prom-
issory note, then the act of the Puritian Manufacturing
Company, or its agents, in sequestering that part of the
writing was fraudulent and vitiated the whole contract
even in the hands of an innocent purchaser, provided it
is not found that the contract in its original form was so
negligently prepared or executed by the Union Store
Company as to render the fraud easy in the hands of a
corrupt holder, or one so negligently prepared that a pru-
dent person should have expected or anticipated such
detachment, and therefore such as would cast the burden
of loss upon the Union Store Company, who had been
guilty of the negligence instead of the innocent pur-
chaser who had accepted the paper for value in good
faith.

No doubt the Union Store Company's name was
placed to the long printed contract with no thought that
the paper, or some part thereof, was negotiable, or that
the Puritian Company or its agents would detach a ma-
terial part of it and attempt to place it in the hands of
an innocent purchaser.

There is a well-recognized rule that renders a maker
of a paper liable to an innocent holder for value even
if the paper has undergone a material change, or has
been detached from a collateral agreement if the maker
of the paper, through his negligence   or   carelessness,
placed the fraud within easy reach of a subsequent hold-
er. This rule is rested upon the principle that as be-
tween an innocent holder and one culpably negligent, the

one guilty of the negligence must suffer the burden. The facts in this case, however, do not appear to bring it within this rule. Whether there was such negligence on the part of the maker as to rest the burden upon him is a question of fact for the determination of a jury. Another rule quite as potent as the foregoing is that where a writing after a delivery is materially changed or altered by a detachment of a material part thereof, without the knowledge or consent of the maker, the whole thereof is rendered unenforceable even in the hands of an innocent purchaser. Unless the Puritian Manufacturing Company had authority to detach the paper sued on in this action, the detachment was such a material change as to vitiate the whole unless it falls within one of the exceptions above set forth. Moreover, the facts in this case as disclosed by this record, make it extremely doubtful whether the Johnson County Savings Bank or Mr. Stouffer were innocent holders.

The demurrer of defendant to the petition, as amended, should have been overruled by the trial court and the parties allowed to plead to an issue, and this should be done upon a return of the case. As holder of the note for collection Harrison was entitled to maintain the action as has been held by this court in Harrison v. Pearcy & Coleman, 174 Ky. 485; Dorherty v. First National Bank, 170 Ky. 813.

Judgment reversed for proceedings consistent with this opinion.