## Empire Coal Mining Company, et al. v. Empire Coal Company.

(Decided March 28, 1919.)

### Appeal from Christian Circuit Court.

1. Vendor and Purchaser—Sale of Mine—Outstanding Lease—Cancellation.—Where a coal mining lease was cancelled for the sole purpose of carrying out a sale of the property covered by the lease, and the sale was abandoned, the cancellation never became effective, and in a suit to recover on the lease against subsequent purchasers of the property who did not know of, or rely upon, the cancellation of the lease, it was not error to hold that the lease had not been cancelled.

2. Mines and Minerals—Sale of Mine—Action on a Lease—Claim of Abandonment—Claim of Worthlessness—Evidence.—In an action by the lessee of a coal mine to recover on the lease against a purchaser of the property covered by the lease, evidence examined and held insufficient to sustain the claim that the lease was abandoned, or that it was of no value.

3. Estoppel—Mines and Minerals—Claim Under Lease—Permitting Improvements and Expenditures.—The lessee of a coal mine is not estopped from asserting its claim under the lease against a purchaser of the property, by permitting the purchaser to make

improvements thereon, where the purchaser had both. actual and constructive knowledge of the lease and knew that the lessee was asserting its claim prior to the making of the improvements.

4. Corporations—Representation of Agents—Scope of Authority—Estoppel.—It was not within the apparent scope of the authority of the vice-president and general manager of a corporation, owning a lease of coal mining property, who had authority to sell the lease only for cash and who went as the representative of a third party, who had sold the property covered by the lease, for the purpose of delivering the deed and collecting the purchase price consisting of cash notes and stock, to represent to the intending purchasers that the title to the property covered by the lease was perfect, and thereby estop the lessee corporation from asserting its claim under the lease.

CALDWELL & GREER, EDMUNDS & STITES, THOMAS N. GREER and LAFFOON & WADDILL for appellants.

TRIMBLE & BELL and BREATHITT, ALLENSWORTH & BREATHITT for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Empire Coal & Coke Company was the owner of 1,200 acres of coal mining lands in Christian county. In March, 1911, it leased the property to the Empire Coal Company for a period of ten years, and the lease was recorded in the county court clerk's office of Christian county. The Empire Coal Company was a corporation organized by Tom and A. V. Rutland, who were brothers and owned all of the stock except one share. Tom was the president, and A. V. the vice-president and general manager. In July, 1915, C. N. Bryan, who resided in Nashville, Tenn., arranged with the officers of the Empire Coal & Coke Company to purchase the property for $15,000.00, to be paid in cash upon delivery of the deed. Bryan arranged with A. V. Rutland to assist him in making the sale of the property, with the understanding that they were to share in the profits. Bryan traded the property to H. Cohen for a stock of furniture in Nashville. At this time, Bryan had no title. Subsequently, Cohen, for reasons not necessary to state, refused to consummate the trade and the sale was abandoned. Thereupon Bryan endeavored to find another purchaser, and with that end in view, approached a lawyer by the name of G. Bibb Jacobs. Through Jacobs' efforts, J. D. Hutton,

a Tennessee banker, became interested. Jacobs and Hutton then went to Empire to look at the property. They spent the night with A. V. Rutland. After supper, Neal Rutland, a brother of A. V. Rutland, says that he told Hutton and Jacobs that they were operating the mine under a ten year lease. He is corroborated by Mrs. A. V. Rutland. Hutton denies that this statement was made, but admits that he may be mistaken. Jacobs does not deny that the conversation took place. Thereafter, further negotiations took place between Hutton and Jacobs on the one hand, and Bryan on the other, by which Hutton was to purchase a half interest in the property for $12,500.00 in cash, or its equivalent, and $25,000.00 of the preferred stock of the First Amortization Mortgage & Bond Company, and Jacobs was to purchase the other half. However, Jacobs had an understanding with Bryan, by which he was not to pay his full half of the purchase price. Of this sum, the Empire Coal & Coke Company was to receive $15,000.00 in cash and the Empire Coal Company, the lessee, $12,500.00 in cash. Bryan prepared a deed from himself, conveying the property to Hutton and Jacobs. The consideration expressed in the deed was $5,000.00 cash and two notes for $5,000.00 each, due respectively in six and nine months, with a lien on the property to secure their payment, and other valuable considerations. When this deed was prepared, Bryan was unable to go from Nashville to Shelbyville, the home of Hutton, and sent A. V. Rutland there for the purpose of closing the deal. At the same time, Bryan told Rutland to deliver the deed upon the delivery to him of the following money and securities, a list of which was endorsed on an envelope which Rutland carried with him: Cash in a check, $5,000.00; notes, $10,000.00; Hutton's preferred stock, $25,000.00; Jacobs' common stock, $17,500.00, a total of $57,500.00. This memorandum was shown to Hutton, and upon delivery of the deed, the items contained in the memorandum were delivered to Rutland. Hutton and Jacobs say that prior to closing the trade, they inquired of Rutland as to the condition of the title, and he replied that there was not a flaw in the title. At the same time, Hutton and Jacobs employed A. V. Rutland as their general manager to run the mines, and agreed to pay him a salary of $300.00 a month with house rent and fuel free. A. V. Rutland then returned to Nashville and delivered the consideration to Bryan.

Bryan then had no title to the property, but collected the check and discounted the two notes and paid the Empire Coal & Coke Company for the property. Thereupon the Empire Coal & Coke Company executed to Bryan a deed subject to the lease in favor of the Empire Company. The latter deed, together with the deed from Bryan to Hutton and Jacobs, was taken to Christian county and recorded. Hutton and Jacobs then took charge of the mine, and A. V. Rutland proceeded to manage it until the following April, when he resigned. After taking possession, Hutton and Jacobs spent several thousand dollars in buying new equipment for the mine. After the sale, Bryan wanted to pay Tom Rutland in securities, but the latter refused to receive them. Subsequently Bryan sold some of the Amortization stock and paid to the Empire Company $3,500.00 and assigned to it a lien note for $1,000.00. Subsequently Hutton and Jacobs organized two corporations, known as the Empire Coal Mining Company and the Empire Coal and Land Company.

This suit was brought by the Empire Coal Company against the Empire Coal Mining Company, the Empire Coal & Land Company, Hutton, Jacobs and Bryan, for the purpose of recovering possession of the coal mines. Subsequently the case was transferred to the equity side of the docket and plaintiff amended his petition and asked the recovery of whatever sum might be found due it under its lease, and that it be awarded a lien on the property to secure its payment. On final hearing, the chancellor gave judgment against Bryan for $8,000.00. He further held that A. V. Rutland, who owned one-half of the stock of the Empire Coal Company, had so conducted himself that he was estopped from receiving any benefit from the Empire mines, or any judgment against the defendants, but that Tom Rutland, who owned the other half of the stock, was not estopped, and decreed that the Empire Coal Company was entitled to recover, for the use and benefit of Tom Rutland, the sum of $4,000.00, which was adjudged a lien on the property. From this judgment the defendants appeal.

It is first insisted that the court erred in not holding that the lease, under which the Empire Coal Company claimed, was cancelled and annulled, and that the Empire Coal Company was looking to Bryan for whatever part of the purchase money remained unpaid. With this con-

tention we cannot agree. Fairly considered, the evidence shows that the cancellation of the lease was made for the sole purpose of carrying out the sale to Cohen and was not intended to be effective unless that trade was consummated. In making the purchase, Hutton and Jacobs did not know of or rely upon the cancellation of the lease. Hence, when the sale was abandoned, the condition on which the cancellation was to take effect never occurred. The parties were restored to their former position, and the rights of the Empire Coal Company were in no wise affected.

Nor is there any merit in the contention that the Empire Coal Company had abandoned its rights under the lease, or that the lease was of no value. It had a valid, subsisting lease and was endeavoring at all times to get the sum of $12,500.00 therefor. Hutton and Jacobs were willing to pay at least $57,500.00 in cash and securities for the fee to the property. The chief value of the property consisted in the right to mine the coal. That being true, it cannot be said that the lease, which conferred this right, was worthless.

But it is insisted that the Empire Coal Company is estopped from claiming under its lease because it stood by and permitted Hutton and Jacobs to make valuable improvements on the property without asserting its claim. Of course, one who stands by and sees another purchase land or enter upon it under a claim of right, and permits such other to make expenditures or improvements under such circumstances as would call for notice or protest, cannot afterwards assert his own title against such person. 10 R. C. L., sec. 97, p. 782. But a careful consideration of the record convinces us that the facts of this case do not bring it within the foregoing rule. Here Hutton and Jacobs had both actual and constructive knowledge of the lease, and it is equally clear that they knew that the Empire Coal Company was asserting its claim prior to the time the improvements were made.

Another ground of estoppel relied on is the fact that A. V. Rutland, the vice-president and general manager of the Empire Coal Company, represented that the title to the property was perfect. With respect to this contention, our conclusions may be stated as follows: A V. Rutland went to Shelbyville as the agent or representative of Bryan for the purpose of delivering the

deed and receiving the consideration. It is not clear that Jacobs and Hutton then knew that he was the vice-president and general manager of the Empire Coal Company, or relied upon his authority to make representations on behalf of that company. But, if we go further and assume that they relied upon his statements because they knew that he was the vice-president and general manager of the Empire Coal Company, it remains to determine whether the facts are sufficient to work an estoppel. The leasehold was practically all the property the Empire Coal Company owned. Ordinarily, the vice-president and general manager of a corporation is without authority to sell and dispose of all its assets. Hence such an act is not within the apparent scope of his authority. Elk Valley Coal Co. v. Thompson, 150 Ky. 614, 150 S. W. 817. The only actual authority A. V. Rutland had was to sell the lease for cash and this authority did not carry with it authority to sell for anything less than cash. White Plains Coal Co. v. Teague, 163 Ky. 110, 173 S. W. 360. Of course, where an agent is acting within the scope of his apparent authority, secret instructions are not binding on the person with whom he deals, but where the transaction, as here, was not within the apparent authority of the agent, Hutton and Jacobs were put on inquiry as to his real authority. 21 R. C. L., sec. 34, p. 855. Had they pursued this inquiry, they would have learned Rutland's actual instructions, and are therefore bound by them. Having authority to transfer the lease only for cash, and Hutton and Jacobs being charged with knowledge of this limitation, it was certainly not within the power of Rutland to accomplish by indirection, what he could not accomplish directly. Under the circumstances, we conclude that it was not within the scope of Rutland's apparent authority, as the vice-president and general manager of the Empire Coal Company, to represent that the title to the property covered by the lease was perfect, and thereby estop that company from asserting its claim under the lease.

Judgment affirmed.