# National Deposit Bank of Owensboro v. Ohio Oil Company.

# Ohio Oil Company v. National Deposit Bank of Owensboro.

(Decided June 23, 1933.)

LOUIS I. IGLEHEART for National Deposit Bank.

SANDIDGE & SANDIDGE and R. MILLER HOLLAND for Ohio Oil Co.

BARNES & SMITH for appellees A. E. Stewart and W. D. Neel.

CARY, MILLER & KIRK for appellee C. A. Libs.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On July 18, 1928, the National Deposit Bank of Owensboro cashed the following check, which was indorsed by the payee, C. A. Libs, and placed the proceeds to his credit:

"Marshall, Ill.    July 18, 1928    No. 112
"The  Dulaney  National  Bank        70—559

Dist. 7
"Pay to the order of C. A. Libs  $9,200.00
Nine Thousand Two Hundred Dollars
"Agent's Disbursing Account

ROY F. KEOWN."

On July 26, 1928, the bank received notice from the Dulaney National Bank that the Ohio Oil Company had stopped payment on the check.  Before receiving this notice, Libs had drawn three checks against his account aggregating $4,895.30, and these checks were paid by the National Deposit Bank.  Thereafter, and before receiving notice of any infirmity in the check, Libs drew two checks on the National Deposit Bank, one for $500 in favor of W. D. Neel, and the other for $2,900 in favor of A. E. Stewart, and these checks were placed to the credit of the payees, and certificates of deposit therefor were issued and delivered to them.

This suit was brought by the National Deposit Bank against the Ohio Oil Company and C. A. Libs to recover the sum of $9,200, with interest.  Neel and Stewart were made parties, and each sought a recovery against the National Deposit Bank of the amount that had been placed to his credit.  By agreement of the parties, the case was tried by the court without the intervention of a jury.  The court rendered judgment against the bank in favor of Neel for $500, and in favor of Stewart for $2,900, and in favor of the

bank against the Ohio Oil Company for $4,895.30, and the further sum of $500 recovered by Neel, and the further sum of $2,900 recovered by Stewart. The bank appeals from that part of the judgment in favor of Neel and Stewart, and the Ohio Oil Company appeals from that part of the judgment in favor of the bank.

We shall first consider the propriety of that portion of the judgment in favor of Neel and Stewart. As before stated, each of the checks, the one in favor of Neel for $500, and the other in favor of Stewart for $2,900 was drawn on the National Deposit Bank by Libs, and was deposited to the credit of the payees by the bank. The rule supported by the great weight of authority and approved by this court is that, when a check is presented to a bank for deposit, drawn directly upon itself, the bank has the right to reject it or to refuse to pay it, or to receive it conditionally, but, if it unqualifiedly accepts the check and places it to the credit of the customer, thereafter it cannot, in the absence of fraud or collusion, repudiate the transaction. The reason for the rule is that the transaction is a completed one, and the effect is the same as if the actual cash had been paid to the customer over the counter, and as between the customer and the bank the latter must bear the loss, which was due to its own mistake or oversight. First National Bank v. Mammoth Blue Gem Coal Co., 194 Ky. 580, 240 S. W. 78; Cohen v. First National Bank of Nogales, 22 Ariz. 394, 198 P. 122, 15 A. L. R. 701; Oddie v. National City Bank, 45 N. Y. 735, 6 Am. Rep. 160; 3 R. C. L. 526.

2. The Ohio Oil Company insists that it is not liable on the check for $9,200 because Roy F. Keown was not authorized in writing to execute or deliver it, and that the bank's plea of estoppel is not available.

Sections 3720b-19 and 3720b-23, Kentucky Statutes, read as follows:

"3720b-19. The signature of any party may be made by an agent duly authorized in writing."

"3720b-23. Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired

through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

In view of the fact that the Ohio. Oil Company carried an account with the Dulaney National Bank known as "Agent's Disbursing Account," and authorized its agents, including Keown, to draw on that account, it may be doubted if section 3720b-19, supra, applies; but, conceding that it does, then it is clear that sections 3720b-19 and 3720b-23 should be read together, and, when so read, there can be no doubt that a party whose name is signed without authority may be precluded or estopped from setting up the want of authority. Baskett v. Ohio Valley Banking & Trust Co., 214 Ky. 41, 281 S. W. 1022.

The facts found by the trial court and fully sustained by the evidence are these: On May 12, 1927, an authorized agent of the Ohio Oil Company accompanied R. F. Keown to the National Deposit Bank and introduced him to the cashier as the company's agent authorized to acquire oil and gas leases on its behalf. At the same time he requested that checks drawn by Roy F. Keown be paid by the bank, and Keown signed a signature card and left it with the bank. Thereafter checks and currency aggregating several hundred dollars were placed to the credit of Keown, and drawn out by him in payment for leases. Later on the Ohio Oil Company furnished a check book to Keown with blank checks therein on the Dulaney National Bank, with the following words printed on each check: "Agent's Disbursing Account." A large quantity of these checks was delivered to Keown in pad form, and Keown used 110 of the checks in acquiring leases and carrying on other transactions for the Ohio Oil Company. Eight of these checks for varying amounts were presented to the National Deposit Bank for collection, and were paid by the Ohio Oil Company out of its "Agent's Disbursing Account" in the Dulaney National Bank. One of these checks for $2,128 was paid by the Ohio Oil Company on July 14, 1928. In addition to this, it appears that the Ohio Oil Company kept two accounts in the Dulaney National Bank, one in its own name, and one in the name of "Agent's Disbursing Account," that the checks on the disbursing account

were the only form of check used and were prepared for the bank by the Ohio Oil Company, and that the Ohio Oil Company furnished the bank with Keown's signature before he drew any checks on the bank. It is not necessary to review the authorities bearing on the question. Having introduced Keown to the bank as its agent, having permitted him to draw checks on his account in the bank, having furnished him with checks to be used in drawing on the "Agent's Disbursing Account" in the Dulaney National Bank, and having paid all the checks on that account that passed through the bank, it cannot be doubted that the representations and conduct of the oil company were such as to lead the bank to believe that Keown had written authority to draw checks and to preclude the oil company from asserting the contrary to the great prejudice of the bank. Citizens' Union National Bank v. Terrell, 244 Ky. 16, 50 S. W. (2d) 60.

But it is contended that, even while Keown was in the employ of appellant, he had authority only to purchase such leases and pay therefor such sums as met with appellant's approval, and further that his agency had been actually revoked at the time the $9,200 check was given. There was no showing that the bank was apprised of any limitation on Keown's authority, and the law is that a principal is bound by the acts of his agent within the scope of his apparent authority, even though his authority be in fact limited, if the person dealing with him is ignorant of the limitation. Empire Coal Mining Co. v. Empire Coal Co., 183 Ky. 699, 210 S. W. 474; Pennyroyal Fair Ass'n v. Hite, 195 Ky. 732, 243 S. W. 1046; Hurst Home Ins. Co. v. Ledford, 207 Ky. 212, 268 S. W. 1090. It is also the rule that a principal is bound by transactions of a former agent with third person ignorant of the termination of the agency in the absence of giving notice of the termination, Globe & Rutgers Fire Ins. Co. v. Porter, 218 Ky. 163, 291 S. W. 6, and there is no claim that the bank was informed of Keown's discharge, or that any public notice thereof was ever given. On the contrary, the record discloses that a check for $2,128 similar to the one in question was drawn by Keown after it is claimed that he was discharged, and was presented to the bank for collection and was paid by the Ohio Oil Company

out of its ".Agent's Disbursing Account" in the Dulaney National Bank.

There is the further contention that the $9,200 check is not the act of the Ohio Oil Company. In support of this position, reliance is had on section 3720b-18, Kentucky Statutes, which reads as follows:

"No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name."

This section makes one who signs in a trade or assumed name liable to the same extent as if he signed in his own name. Not only do the words "Agent's Disbursing Account" appearing on the check make it ambiguous, but as said in 40 Harvard Law Review, 494, and supported by the following authorities, Edmunds v. Bushell, L. R. I. Q. B. 97 (1865); Pease v. Pease, 35 Conn. 131, 95 Am. Dec. 225 (1868); Devendorf v. West Virginia Oil Co., 17 W. Va. 135 (1880); 1 Williston, Contracts (1920) sec. 300; 1 Daniel, op. cit. sec. 304; contra, Luna v. Mohr, 3 Gild. (N. M.) 63, 1 P. 860 (1884); cf. Bartlett v. Tucker, 104 Mass. 336, 6 Am. Rep. 240 (1870):

"Parol evidence was usually allowed at common law to show that an individual or corporation carried on its business under the adopted name of its agent."

However the Ohio Oil Company may have operated its other departments, its method of acquiring leases was through an agent called "leaser," who was authorized to purchase leases on its behalf, and to pay therefor with checks signed in his own name instead of its name. In short, it carried on this part of its business under the adopted name of its agent. In the circumstances, we are constrained to the view that the signing of the agent was a signing in a trade-name within the meaning of the statute.

When Libs, the payee of the $9,200 check, presented it to the bank, the bank gave him a deposit slip containing the following just before the item deposited:

"Right is reserved and the bank is authorized to forward items for collection or payment through

to the drawee or payer bank or through any other bank and it is directed to receive payment in drafts drawn by the drawee or their banks and except for negligence this bank shall not be liable for its honor of the drafts so received in payment nor for loss thereon.''

The point is made that, by reason of the contract contained in the deposit slip, the bank took the check merely for collection, and did not acquire such title as would permit it to maintain an action upon it. Cases involving the passing of title usually arise between the bank and the depositor, or his creditors. Here no claim to the check is being asserted by Libs or his creditors, or any one else. Only the bank and the Ohio Oil Company are concerned. As between it and the Ohio Oil Company the bank is the holder of the check, and may sue thereon in its own name. Section 3720b-51, Kentucky Statutes; McGowan v. People's Bank, 185 Ky. 20, 213 S. W. 579; Cox v. Riggins, 223 Ky. 510, 4 S. W. (2d) 403. Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time, Kentucky Statutes, sec. 3720b-26, and, where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien. Section 3720b-27, Kentucky Statutes. While it doubtless is true that a bank is not a holder in due course of a negotiable instrument if it does nothing more than place it to the credit of the former holder, the weight of authority and the rule prevailing in this state is to the effect that, even where a bank takes a check for collection and credits it to the depositor's account, upon condition that it may be charged back in case of dishonor, and the depositor has no other funds to his credit, it nevertheless is a holder in due course to the extent that it honors the depositor's checks, or becomes liable thereon, before receiving notice of any infirmity in the check, and this is true whether the bank be regarded as the absolute owner of the check, or merely as having a lien thereon for sums paid out, or for the payment of which it had become bound. Old National Bank v. Gibson, 105 Wash. 578, 179 P. 117, 6 A. L. R. 247, notes; Choteau Trust & Banking Co. v. Smith, 133 Ky. 418, 118 S. W.

279; Armstrong v. National Bank of Boyertown, 90 Ky. 431, 14 S. W. 411, 12 Ky. Law Rep. 393, 9 L. R. A. 553. Here the bank honored Libs' checks to the extent of $4,895.30, and became bound for the payment of the $500 check which he executed to Neel and the $2,900 check which he executed to Stewart. To this extent it was a holder in due course and the chancellor did not err in so adjudging. Not only so, but even if the bank held the note for collection only, it was entitled to maintain an action thereon. Harrison v. Union Store Co., 179 Ky. 672, 201 S. W. 31.

Lastly, it is insisted that the check was not negotiable because it was drawn upon a particular fund. One of the requirements of a negotiable instrument is that it must contain an unconditional promise or order to pay a sum certain in money. Section 3720b-1, Kentucky Statutes. When an order or promise to pay is unconditional or not unconditional is determined by section 3720b-3, Kentucky Statutes, which reads as follows:

> "An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with it:
>
> "(1) An indication of a particular fund, out of which reimbursement is to be made, or a particular account to be debited with the amount; or
>
> "(2) A statement of the transaction which gives rise to the instrument.
>
> "But an order or promise to pay out of a particular fund is not unconditional."

The check is not an order or promise to pay out of a particular fund. It imports absolute liability, and merely indicates a particular account to be debited with the amount. We are therefore constrained to the view that it is a negotiable instrument. Bank of Kentucky v. Sanders, 3 A. K. Marsh. 184, 13 Am. Dec. 149; Early v. McCart, 2 Dana, 414; Biesenthall v. Williams, 1 Duv. 329, 85 Am. Dec. 629.

What we have written is on the theory that the check is a negotiable instrument, but, if it be not negotiable, as contended by the Ohio Oil Company, the defenses based solely on the provisions of the Negotiable

Instruments Act fall to the ground, and the situation comes to this: The bank as the holder of the note may recover thereon subject to any defenses between the Ohio Oil Company and Libs, the payee. The evidence clearly shows that Keown was authorized by the Ohio Oil Company to purchase leases and to issue checks therefor, and that, pursuant to this authority, he had purchased leases aggregating several thousand acres, and had paid therefor with checks like the one in question. Keown bought the leases from Libs and paid therefor with the $9,200 check. Prior to the transaction in question, Keown had bought other leases from Libs and had paid therefor by a similar check for $2,128, which was paid by the Ohio Oil Company. In view not only of the actual authority conferred on Keown, but of the ostensible authority with which he was clothed by the acts and conduct of the Ohio Oil Company, Libs, who was not informed of any limitation on Keown's authority, or of the revocation of the agency, had the right as a reasonably prudent man to act on the presumption that Keown had the authority to purchase leases and issue checks therefor, and that this authority had not been withdrawn at the time of the transaction in question, and there can be no doubt that the Ohio Oil Company is bound by his acts. Cartmel v. Unverzaught, 54 S. W. 965, 21 Ky. Law Rep. 1282; Gragg v. Home Ins. Co., 139 Ky. 472, 107 S. W. 321, 32 Ky. Law Rep. 988; Johnson v. Christian, 128 U. S. 374, 9 S. Ct. 87, 32 L. Ed. 412. As Libs could recover on the check, it necessarily follows that the bank may also recover.

Both on the appeal of the bank and the Ohio Oil Company the judgment is affirmed. The bank will pay one-third, and the Ohio Oil Company two-thirds, of the costs.