## McCraw's Ex'x v. Young.

Dec. 2, 1938.

As Extended on Denial of Rehearing March 24, 1939.

Churchill Humphrey, Judge.

JOHN R. MOREMAN and HITE H. HUFFAKER for appellant.

WOODWARD, DAWSON & HOBSON and WILBUR FIELDS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Dismissing appeal.

This case is here on a third appeal. Young v. McCraw's Adm'x, 269 Ky. 736, 108 S. W. (2d) 712; Young v. McCraw's Ex'x, 273 Ky. 581, 117 S. W. (2d) 577. On the first the dominant question was whether a document executed by Mrs. Young and her husband delivered to Charles McCraw was a mortgage or a contract of sale. The chancellor held it to be a mortgage. This court found it to manifest a sale, and reversing, directed the chancellor to ascertain amounts paid to the Youngs by McCraw; to credit them on the purchase price giving Mrs. Young judgment for any balance.

On the second trial the commissioner reported that $7,000 was due Mrs. Young, with certain interest, same to be credited by five items consisting of rents withheld by Young and not applied on the mortgage which McCraw had assumed, cash payments, and an item of $3,583.10, which Young had received from the sale of certain stocks loaned by McCraw to Young, used by him to bolster a stock deal which was shaky.

Mrs. Young filed exceptions to each recommendation of the commissioner. The chancellor overruled exceptions as to four of the items (rents, payments, etc.), but sustained exception to the allowance of the stock credit.

Objections were made by parties to the ruling on the exceptions, and judgment was entered in favor of Mrs. Young for $4,313.18. Record No. 2 fails to show appeal granted in that judgment to either party, but on February 2, 1938, McCraw's administratrix was granted an appeal and superseded the judgment. On February 18, 1938, Mrs. Young was granted an appeal, which she perfected and filed March 10, 1938, and on May 17, 1938, this court affirmed the judgment of the lower court. (Second opinion.)

Though it appears from the records that appellant here was first granted an appeal, the same was never

perfected; neither was there a motion for a cross-appeal as provided by the Civil Code of Practice, section 755, and which must be made here before final submission. Center v. Rose, 252 Ky. 463, 67 S. W. (2d) 698, and cases cited.

On May 27, 1938 (after the appeal of Mrs. Young was decided) appellant filed a copy of the judgment of January 22, 1938, in the clerk's office of this court, with copy of an order showing that appellant had been granted an appeal on February 2, 1938, but did not file any other portion of the record on the second trial. There was a motion that "this appeal be consolidated with and heard on the records in" the two former appeals, which motion was sustained. On June 7, 1938, appellee filed motion to dismiss the appeal, which was passed to the merits.

Appellee cites section 757 of the Civil Code of Practice, which provides the ground upon which a motion similar to the one pending may be made, and the manner of presentation. Appellee followed the method provided, and now insists that because of failure of appellant to perfect and prosecute appeal granted below, or to seek and have granted cross-appeal, and prosecute it by one method or the other while appeal No. 2 was pending, she is without right to prosecute the appeal now; that if allowed, it would be in law and in fact a reconsideration of the judgment heretofore affirmed.

Appellee relies solely on Empire Coal Co. v. Empire Coal Mining Co., 188 Ky. 516, 222 S. W. 947. In that case there were several parties involved in the matter which finally culminated in an appeal to this court by the Empire Coal Mining Co. et al. v. Empire Coal Company, and on March 28, 1919, the judgment was affirmed, 183 Ky. 699, 210 S. W. 474. Thereafter before two years had expired, the Empire Coal Company undertook an appeal upon the same record upon which the former appeal was taken. Appellee moved for dismissal, basing the motion on the ground here presented.

The motion in the case supra was given much consideration, and the court rendered a concise opinion, which has never been overruled or modified. In the course of the opinion after stating the facts in respect to the procedure, we said: "The appellees here are the same as the appellants upon the former appeal, and the appellant here was the appellee on the former appeal."

On the appeal in the second case (Young v. Mc-Craw's Adm'x) it was argued by appellee here that the court erred in allowing the credits as set out therein, while appellant here (McCraw's personal representative) argued that the court was not in error in respect to his ruling on the four items allowed as credit, but that the court's exclusion of the stock item was error, and that for this error that portion of the judgment should be reversed, in other words it was claimed that "the case should be reversed upon the appeal of Owen M. McCraw's Executrix, and affirmed upon the appeal of Josephine H. Young."

We fail to see any distinction between the matter here before us, and the situation as it was presented to the court in the Empire Coal Case, supra. This being so, we can not escape the conclusion that the reasoning in that case, and the determination reached, should apply and be applied here. We said therein:

"The appellant was not deprived of an opportunity, by the provisions of the Civil Code or otherwise, of bringing before this court any cause of complaint that it had of the judgment of the trial court with regard to the matter in controversy between it and the appellees, upon the former appeal, before the submission and trial of the cause upon that appeal and adjudication by this court upon the merits of the appeal. The appellant had two ways open by which it could have had, before the question was adjudicated upon by this court, any complaint which it had of the judgment, presented to this court for trial, along with the appeal of the appellees. It could have taken the appeal which was granted it by the lower court, or it could have prayed a cross-appeal with the same effect as provided by section 755, supra, Civil Code. Hence it appears that appellant, alleging a cause of action against appellees, secures, by the judgment of the chancellor, a recovery against them, but not the amount to which he claims to be entitled. The appellees appealed from that judgment, and the appellant also prayed and was granted an appeal. It, however, did not take its appeal, nor did it take a cross-appeal, but, instead, appeared in this court, and insisted upon the affirmance of the judgment. After the judgment is affirmed, it now undertakes an original appeal from the judgment involving the same matter,

which was the subject of the decision of this court upon the former appeal. When the judgment of the chancellor was affirmed, it became the judgment of this court, from which no appeal can be taken to itself. If it had been reversed, then there would have been nothing to appeal from. It was the duty of appellant, when appellees took their appeal from the judgment, before the submission and trial, either to have effected its appeal from the judgment or to have taken a cross-appeal, and thus had all the questions in controversy, between the parties about the particular matter, disposed of by the one judgment of the court. This course should have been pursued, not because of any statutory provisions, but that this court should not be subject to the trial of the same matter of controversy between the same parties, twice, and because when the decree of the chancellor was affirmed it became the judgment of this court, which is final, and not subject to appeal, and because of the common-law principle, that when parties have an action pending before a tribunal having jurisdiction of the matter in controversy, it is their duty to present to the court all their respective grounds to sustain its action, and to defeat it where the law authorizes them so to do, and when the court has determined the matter, it concludes both parties in another action or proceeding between them concerning the same issues.''

Appellant correctly insists that where appellee is granted an appeal in the trial court, he can not be forced to prosecute a cross-appeal in the Court of Appeals, but may proceed in a regular manner upon the appeal which is granted him, and cites in support thereof, McKay v. Mayes, 32 S. W. 606, 17 Ky. Law Rep. 827.

When we turn to that case we find that it was before the court on motions to dismiss the appeal and to affirm as a delay case, which latter motion was sustained. We overruled the motion to dismiss, and held that McKay, on a former appeal, was not appellant but appellee. We said:

''He did not pray, nor was he entitled to have granted, a cross appeal. In the case below no issue was formed between the present appellant * * * and the former appellant * * *. Neither sought relief against the other. The judgment appealed

from was one subjecting Mrs. McKay's property to the payment of the debt which the present appellant owed the appellees. Therefore, there was no occasion for the present appellant to take a cross appeal.''

The language relied upon by appellant here to sustain his position: ''In cases where the appellee is entitled to a cross-appeal, but fails to prosecute it, his right to do so is not barred, although the judgment may have been affirmed,'' is to our minds dictum, as it had no bearing on the question before the court, since the court had just held that appellant was not entitled to a cross-appeal.

The court cited Wickliffe v. Buckman, 12 B. Mon. 424, as justifying the obiter conclusion. A review of that case which was decided in 1857 shows the question determined was, whether since the passage of an Act of 1838 (Loughborough 1842) allowing the appellee, or defendant in error, to assign cross errors without taking a cross-appeal, or suing out a writ of error, might, although he fails to avail himself of the right which the statutes give him, still prosecute a writ of error to reverse the decree after it had been affirmed. The court said:

''Previous to the passage of the statute, the appellee, or defendant in error, had no right to object to the decree; but if the errors complained of were not injurious to the appellant, or the plaintiff in error, the decree was affirmed, and the defendant in error was then allowed to prosecute his writ for the correction of any errors in the decree that were to his prejudice.''

The court held the right given by the statute of 1838 to be cumulative, and that a failure to exercise it did not take away the prior existing right. The opinion predicates the right to prosecute a writ of error by the appellee after affirmance, on the ground that there was an established right at that time, which was a time when there was no Code, and very few statutes dealing with appeals, or regulating the procedure in the appellate court. See Loughborough 1842, Ch. 7.

The case of Patrick v. Fletcher, 149 Ky. 730, 149 S. W. 1008, is cited as authority by appellant. In that case, which appears to have been up on motion to grant

a cross-appeal, after the original appeal had been disposed of, the court held: "A cross-appeal can be granted only in a pending appeal. It cannot be granted after the original appeal has been heard and finally determined." Then the court dropped in this unnecessary suggestion: "In McKay v. Mayes * * * and Wickliffe v. Buckman, * * * an original appeal was taken, not a cross-appeal," but the court did not point out the reason why the original appeal was allowed in the cases cited.

We note in passing, that in Montgomery v. Gaar, Scott & Co., 37 S. W. 580, 18 Ky. Law Rep 607, decided shortly after the McKay Case, supra, and wherein the status on the attempted appeal was the same as it is here, the court in dismissing the appeal said [page 581]: "The appellant having been a party to the appeal in that case, is concluded thereby, and, having failed to prosecute a cross appeal, cannot reopen the question by this appeal."

The cases of City of Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 A. L. R. 346, and Marion Nat. Bank v. Phillips' Adm'rs, 35 S. W. 910, 18 Ky. Law Rep. 159, are cited by appellant as sustaining authorities. Neither of these conflict with the ruling in the Empire Coal case, supra, nor touch upon the point raised.

We see no reason why the rule laid down in the Empire Coal case, supra, should not apply here.

In spite of the facts and circumstances related, and due to others appearing in the records before us, we have concluded to review to some extent the question presented on the third appeal. We may say, however, after doing so, we have reached the conclusion that had it been disposed of on the second appeal, we would have sustained the conclusion expressed by the chancellor.

Looking to the record on the second appeal, we find the commissioner in reporting the allowed credit of $3,583.10 (stock item) did so because this court in its first opinion had directed that McCraw was to be credited "by all sums which he paid to the Youngs, or either of them, after the execution of the contract." When the matter came before the chancellor on exceptions, he, reviewing the evidence before him, declined to adopt the commissioner's finding, but giving due consideration to the above quoted language, found that as

between the parties, "there was a sale and purchase of real estate between McCraw and Mrs. Young. There was a series of market transactions, a laundry operation, and a general borrowing between McCraw and Young," and from the evidence before him held that the stock transaction was not involved in any way in the contract of sale, or purchase of the realty. In this conclusion we think he was correct, and if doubt existed we would be compelled to resolve that doubt in favor of the chancellor's ruling.

As we read the evidence we fail to find any which would satisfactorily convince us that Mr. McCraw conceived that this loan of stock to Young for the express purpose of bolstering his infirm stock deals, was intended to be considered in the contract for sale or purchase of the real estate. It was hardly to be anticipated that when the stock was loaned for the purpose indicated, there would be an ultimate sale of the stock, or that Young would, as was claimed, appropriate or misappropriate the proceeds.

In his testimony Mr. McCraw does not say that this particular item was to be treated as a credit. Young in his first testimony says nothing was said about it; later, after situations had changed he says that it was. Young in his testimony says that the railroad stock was "advanced" on the contract, though at the time of the advancement there was no contract. This testimony was given in 1936. In 1937, testifying on the same subject, Young was asked:

"Q. State whether or not when he advanced these stocks * * * to you that he made any mention of the house at Anchorage? A. I can't remember that long back. I don't know what was said at that time."

In his first testimony he said that he got the proceeds from the sale of the stock. In his later testimony he was asked: "When this stock was sold out, did you receive any cash?" His answer was: "I did not." He further said he did not know whether or not Mrs. Young received any of the proceeds of the sale. Mrs. Young said that she had not.

As evidence that McCraw treated the stock transaction as a loan of the stock, and not an advancement on the contract, the record shows that during the pendency

**550**

of the appeal in 1936, Young was seeking a discharge in bankruptcy, and the personal representative of McCraw (Mrs. McCraw) filed a verified claim in that proceeding for the sum of $3,580.10, stating that McCraw, at the request of Young, had loaned him 200 shares of I. C. stock and 60 shares of N. Y. C. stock, which Young sold and converted into cash, receiving the sum named, which he had promised to repay with interest.

All through the records it is made plain that the stock transaction was no more connected with the real estate deal than were some other transactions. For instance, the advancements to assist in the conduct of Young's laundry business and the personal loans.

The stock transaction arose and was carried out in the following manner: Prior to the contract Young was a speculator in stocks, dealing at times with a brokerage firm with which McCraw was connected. Young had borrowed $10,000, from a bank for the purpose of speculation. McCraw loaned Young some Joint Stock Land Bank bonds to pledge as collateral. The market broke, and to protect the collateral McCraw loaned Young $3,000, in Union Joint Stock Land Bank bonds to pledge as additional security. The bank was still uneasy and pressing Young, and McCraw loaned him the shares of stock above mentioned. Later the stocks were sold, and it is claimed that by some means or other Young received and converted the proceeds to his own use.

The deal between the Youngs and McCraw relative to what we construed to be a contract of sale, and what McCraw contended all the time was a mortgage, was consummated after the stock transactions (excepting the sale of the stock by Young) between McCraw and Young, so it could hardly have been contemplated by the parties that the stock transaction was intended as a payment on the property. Particularly since McCraw was an unwilling purchaser, contending up to the last, and until advised otherwise by this court that he was merely a mortgagee.

As we read the proof tendered on both appeals, it is difficult to conclude that it was in the minds of the parties that the stock transaction was to be involved in the sale or purchase of the real estate. The only time Mr. McCraw referred to the stock was when he said: "I have receipts from Henning-Chambers where they had

sold and the bank was crowding in; there were 209 shares of I. C. and it was sold for 9-¼, and 60 shares of I. C. (meaning, perhaps, N. Y. C.) sold at 8-¾." This was the only evidence relating directly to the stock deal, save that of the Youngs.

We note the chancellor found that the stock item, or the proceeds of the sale, was not applicable to the purchase price of the real estate, and we held his judgment to be correct, and we are still of that opinion. Appellee's motion is sustained.