## CASE *vs.* THE MECHANICS' BANKING ASSOCIATION.

In trover of certain checks, &c. drawn upon banks in New-York, it appeared that the plaintiff was in the habit of sending checks to his agent in that city to be converted into cash, for the purpose of buying eastern money. The plaintiff indorsed the checks in question to his agent, and sent them to him for that pupose. The agent indorsed them to the defendants, who received them without notice of the agency, and paid value by passing the amount to the credit of the agent, and certifying checks on their bank for the amount of the credit. The agent misapplied the funds and failed. *Held*, that the title to the checks passed to the defendants, and therefore that the action would not lie.

In general, the holder of commercial paper is presumed to have received it in good faith and for value paid.

When, however, the paper is shown to have been put in circulation fraudulently, it seems the presumption is changed, and the holder must show that he received it in good faith and for value.

PHILIP CASE brought trover in the superior court of the city of New-York against the Mechanics' Banking Association, for the conversion of certain drafts or checks drawn by [167] other parties upon the Bank of Commerce and other banks in the city of New-York, payable to the order of the plaintiff. On the trial before OAKLEY, C. J. it appeared that the plaintiff was in the habit of sending checks to one David How in New-York, to be converted into cash for the purpose of purchasing eastern money. On the 4th of January, 1848, he sent the checks in question, amounting to $7102,85, indorsed to the order of How. On the 5th of January, How indorsed the checks to the defendants and deposited the same in their bank. How did business at the defendants' bank, and the amount of the checks was carried to his credit on a pass-book which he kept. The bank at the same time gave to How certified checks to the amount of the deposit, which he on the same day paid out and used in his own business. How was a broker and had been agent for the plaintiff for several years; but the defendants did not know of his agency. On the 8th of January, the checks were demanded of the defendants, who answered that they were not in their possession, or if they had them, they took them in the regular course of business, and declined to give them up. How had then failed. Upon these facts the defendants moved for a nonsuit which was denied. The defendants excepted. The plaintiff had a verdict which the superior court refused to set aside. And after judgment the defendants appealed to this court.

*D. Lord*, for appellants.

*A. W. Clason*, for respondent.

PRATT, J. The only question presented by this case is whether the evidence upon the trial was sufficient to authorize the court to submit it to a jury. The plaintiff declared against the defendant for converting several checks and certificates of deposit, and it was incumbent upon him to prove the allegations in his declaration. The instruments alledged to have been

wrongfully converted belonged to a class of mercantile paper. [168] They had not been dishonored when they came into defendant's possession, and were, therefore, subject to all the rules applicable to ordinary negotiable paper, and the bank was entitled to all the privileges of the holders of such paper. They had been indorsed by the plaintiff to How the agent, and by him they were indorsed to the bank without any knowledge on the part of the bank that How was not the absolute owner of them, or that they had been designed or negotiated for any use other than that to which they were applied. On a careful examination of the testimony in the case, I am not able to find any facts which should affect their validity in the hands of the bank, or which should render its title to them invalid. In order to place the case in a position in which the relation of the parties to each other, and the legal rights resulting therefrom, may be more readily appreciated, suppose the bank had brought its action against the plaintiff as indorser, after having taken all the steps requisite to charge him as such. Would the facts proved in this case constitute any defence to such action? Clearly not, and yet it will scarcely be claimed that any less evidence would be requisite to sustain this action of trover for converting the instruments, than would be required to sustain such defence.

First. There is nothing in the testimony which shows that How, in negotiating the paper to the bank, was not acting strictly within the scope of his agency; that this was not a legitimate method of raising the funds with which to purchase eastern money, and thus transact the business intrusted to him as agent. The fact that he afterwards misappropriated the proceeds of this paper, cannot affect the validity of the transaction with the bank. Until, therefore, the plaintiff had shown that some fraud had been committed upon him by his agent, in negotiating the paper, the bank was not called upon to show that it had received the paper bona fide and for a valuable consideration. The presumption in such cases always arises out of the negotiation of that kind of paper that it was so received unless the contrary be shown. (6 *Wend.* 615.) Secondly. The evidence in this case shows affirmatively that a full considera-

tion was in fact paid by the bank for the checks and cer- [169] tificates at the time of their negotiation. How received in return certified checks on the bank to the full amount, which he negotiated, and which the bank for any thing that appears in the case, had paid, or were liable to pay.

I think, therefore, that the motion for a nonsuit should have been granted, and the exception is well taken.

Judgment reversed, and *venire de novo.*