FANNY B. HAZARD *vs.* JOEL M. SPENCER *et al.*

In the trial of an action on a promissory note, it appeared that the note was fraudulently issued by an agent of the defendant maker. No evidence was adduced to show that the plaintiff was a *bonâ fide* holder for value without notice.

*Held*, that the plaintiff could not recover.

When the proof shows a note to have been fraudulently, illegally, or feloniously obtained, or put into circulation, the *onus probandi* is cast upon the party who asserts his title as a *bonâ fide* holder.

A note was dated "Providence, R. I.," and made payable "at bank."

*Held*, that it was payable at any bank in Providence, Rhode Island, although the maker lived in another State.

DEFENDANT'S petition for a new trial.

*December* 26, 1891. TILLINGHAST, J. This is an action of *assumpsit* by the holder of a negotiable promissory note against the maker and indorser thereof. The note is as follows: —

$300. PROVIDENCE, R. I., March 1, 1890.

Four months after date I promise to pay to the order of Orin S. Spencer, Three Hundred Dollars, at Bank. Value received.

No. —— Due —— (Sgd) JOEL M. SPENCER.

(Indorsed) ORIN S. SPENCER.

The case was tried to the court, in the Court of Common Pleas, jury trial having been waived, and judgment was rendered in favor of the plaintiff for the amount of the note, with interest.

The case is before us on the defendant's petition for a new trial, on the ground that the verdict was against the law and the evidence.

After the trial in the court below, and before the judgment was rendered, the plaintiff discontinued the case as to the defendant, Joel M. Spencer.

At the trial in the court below, the plaintiff produced his note, offered proof of demand and protest, and notice to indorser, and rested his case.

The defendant then offered the following proof: Joel M. Spencer, one of the defendants, testified that he made the note; that he gave it to renew a note formerly given for the same amount, and sent it to his brother, the other defendant, to get his indorsement; that a few days thereafter he received a letter from his son, Joel M. Spencer, Jun., saying that the party holding the note, for which this was to be given in renewal, wanted one on shorter time; that witness then made a note payable in sixty days, which he also sent to his said brother for indorsement; that he heard no more about the matter until he got the notice from the bank, which said notice he supposed was in reference to the sixty days' note. He further testified that he supposed his son had destroyed the four months' note, the latter having so informed him.

Orin S. Spencer, one of the defendants, testified that he received the note in question and indorsed it, as he had been in the habit of doing for his brother; that after he indorsed it he handed it to Joel M. Spencer, Jun., his said brother's son, to be used by him in taking up the note for which it was to be given in renewal; that said Joel M. Spencer, Jun., afterwards came back to witness and said that Mr. Cranston, the holder of the original note, refused to take the said four months' note in renewal, and wanted one on shorter time; that said Joel M. Spencer, Jun., also said that he had written to his father to that effect, and also stated that he had destroyed the said four months' note. Witness afterwards indorsed the sixty days' note, and this was used by said Joel M. Spencer, Jun., in renewal of the note held by Mr. Cranston. Witness supposed that the note in suit had been destroyed, until he received notice of the protest thereof.

No evidence was offered by the plaintiff in rebuttal tending to

prove that he was a *bonâ fide* holder of the note for value without notice. The uncontradicted proof, therefore, was to the effect that the note in suit was fraudulently issued by said Joel M. Spencer, Jun., it having been obtained by him from the defendants, for the sole purpose of being used in the renewal of a prior note for the same amount, upon which the defendants were liable, and having been diverted by him to another and entirely different purpose. In other words, the proof shows that he was guilty of the embezzlement of the note. Pub. Stat. R. I. cap. 242, § 16. Under this state of the proof, was the plaintiff entitled to recover?

We think not. For while it is *primâ facie* sufficient, in order to entitle the plaintiff to recover in an action against the indorser of a negotiable promissory note, there being no denial of the signatures, to produce the note in evidence and prove demand, protest, and notice to indorser, yet, where at the trial the defendant introduces evidence to show that the note was illegally or fraudulently obtained or put in circulation, it is then incumbent on the plaintiff to prove that he is a *bonâ fide* holder for value without notice. In other words, the burden is always upon the party asserting his title as a *bonâ fide* holder, in a case where the proof shows that the note has been fraudulently, illegally, or feloniously obtained, or put in circulation.

In *Vallett* v. *Parker*, 6 Wend. 615, it was held that if the note has been lost or stolen, or fraudulently put into circulation, then the plaintiff must show that he came lawfully and fairly by it, and paid value for it. In *First National Bank* v. *Green*, 43 N. Y. 298, 300, Rapallo, J., stated the rule of evidence in such cases in these words: " A plaintiff, suing upon a negotiable note or bill, is presumed in the first instance to be a *bonâ fide* holder. But when the maker has shown that the note was obtained from him under duress, or that he was defrauded of it, the plaintiff will then be required to show under what circumstances and for what value he became the holder." 2 Greenleaf on Evidence, § 172; *McClintock* v. *Cummins*, 2 McLean, 98; *Munroe* v. *Cooper*, 5 Pick. 412; *Holme* v. *Karsper*, 5 Binn. 469; *Duncan* v. *Scott*, 1 Camp. 100; *Case* v. *The Mechanics' Banking Association*, 4 N. Y. 166.

" The reason for this rule, given in the later English cases, is that where there is fraud the presumption is, that he who is guilty

will part with the note for the purpose of enabling some third party to recover upon it, and such presumption operates against the holder, and it devolves upon him to show that he gave value for it. *Bailey* v. *Bidwell*, 13 M. & W. 74; *Smith* v. *Braine*, 16 Q. B. N. S. 214; *Harvey* v. *Towers*, 6 Exch. Rep. 656." See, also, *Vosburgh* v. *Diefendorf*, 119 N. Y. 357.

The doctrine announced by this court in *Millard* v. *Barton*, 13 R. I. 601, appears to be in harmony with the decisions above quoted from. In that case Mr. Justice Potter, after a careful review of quite a number of the leading cases upon the subject, laid down the rule of evidence applicable thereto as follows, 13 R. I. 610 : " In the order of trial, the plaintiff first produces his note, and, the signature not being denied, may rest his case. If the signature is his, it is *primâ facie* evidence that the whole instrument is genuine. Then the defendant may put in evidence to prove fraud, etc., in the inception of the note. The plaintiff, in all those cases where the note would be valid in the hands of a holder for value, must then show that he is such, and that he took it in good faith. And he may be required to show the circumstances under which he took the note, as bearing upon this point."

The case before us, therefore, in so far as the question now under consideration is concerned, is practically ruled by the case last mentioned. See, also, Daniel on Negotiable Instruments, 4th ed. § 166, and cases cited; 2 Parsons on Notes and Bills, 438, and cases cited in note; *Mace* v. *Kennedy*, 68 Mich. 389; *Gray's Adm'r* v. *The Bank of Kentucky*, 29 Pa. St. 367; *Sperry* v. *Spaulding*, 45 Cal. 544, 549; *Worcester County Bank* v. *Dorchester & Milton Bank*, 10 Cush. 490; *Griffith* v. *Shipley*, 22 Atlantic Reporter, 1107; *Giberson* v. *Jolley*, 120 Ind. 301; *Citizens' Bank* v. *Leonhart*, 126 Ind. 206.

The defendant, Orin S. Spencer, contends that he is not liable as indorser on said note because no legal demand was made upon the maker for the payment thereof. And in support of this contention, he relies mainly upon the authority of *Barnes* v. *Vaughan*, 6 R. I. 259. In that case the note was not made payable at any particular place, and this court held that notice to the maker, before the day of payment, that the note had been left at the Mount Vernon Bank, in Foster, R. I., for collection, could not avail to

make it payable at said bank. The court says, p. 261: " The maker had not by the terms of his contract agreed to pay the notes at that bank, and a demand there was no demand upon him."

In the case at bar, however, the note is dated at Providence, and is made payable " at bank."

The proof shows that the maker resided at Bridgewater, in the State of Massachusetts, when the note was made; that, after making the note, he mailed it to his brother, said Orin S. Spencer, who resided at said Providence; that he indorsed the note and handed it to his nephew, Joel M. Spencer, Jun., for whose accommodation, we understand, it was made; that Mr. Cranston, the holder of the note, for which this was intended by the defendants to be a renewal, was a banker, also residing in said Providence; and that, some time before the note fell due, the plaintiff, who was then the holder thereof, left it at the Industrial Trust Company, a duly organized banking corporation of Providence, for collection, informing them at the time of the residence of the maker. The proof further shows that notice that the note was in said bank for collection was duly sent to the maker at said Bridgewater; that he received said notice eight or ten days before the note fell due; and that he at once came to Providence, went to said bank, and made inquiries concerning the note. And the proof does not show that either he or the indorser ever made any objection to the payment of said note, on the ground that payment thereof was not properly demandable at said bank, until the trial in the court below. Demand for the payment of said note was made at said bank by the notary before the protest, in the usual way. We think, therefore, it clearly appears that it was the intention of the maker to make the note payable at a bank in Providence, the place where it was to be delivered and used. And, as he did not specify any particular bank at which it was to be payable, the holder had the right to present it for payment at any bank in said city. *North Bank* v. *Abbott*, 13 Pick. 465; *Barrett* v. *Dodge*, 16 R. I. 740, 743; *Langley* v. *Palmer*, 30 Me. 467. Moreover, the indorser, having negotiated the note in this form, must be presumed to have intended to leave the election, at what bank to present it for payment, with the holder thereof. *Langley* v. *Palmer*, 30 Me. 467, 469. It is doubtless true that merely dating a note at a

particular place does not of itself make it payable there, if the holder knows that the maker resides elsewhere, *Taylor* v. *Snyder*, 3 Denio, 145, the place where it is dated being only *primâ facie* evidence of the residence of the maker, and perhaps, also, of the place of payment, although as to the latter presumption there is much conflict of authority. For those authorities which hold that it is not, see 1 Parsons on Notes and Bills, 441 and 458, and cases cited; *Taylor* v. *Snyder*, *supra*; *Lightner* v. *Will*, 2 Watts & S. 140; *Anderson* v. *Drake*, 14 Johns. Rep. 114. Chancellor Kent lays it down as a general rule that, "if there be no other evidence of the maker's residence than the date of the paper, the holder must make inquiry at the place of the date," and he adds that "the presumption is, that the maker resides where the note is dated, and that he contemplated payment at that place." 3 Kent Comment. 7th ed. *96; *Smith* v. *Philbrick*, 10 Gray, 252; Tiedeman on Commercial Paper, § 314, and cases cited; *White* v. *Wilkinson*, 10 La. Ann. 394; Daniel on Negotiable Instruments, § 640, and cases cited; *Clark* v. *Searight*, 135 Pa. St. 173.

But as the note in suit not only bears date at Providence, but is also made payable "at bank," we think the only fair presumption is that it was intended to be made payable at Providence, and hence that the knowledge of the holder that the maker resided elsewhere has no bearing upon the case. In other words, we think the natural construction of the contract itself is, that the note will be paid at either of the banks in Providence which the holder may select. For we can conceive of no reason for the making of a note payable "at bank," unless it be thereby intended to make it payable at some bank in the city or town where the note bears date.

Moreover, the note being made payable "at bank," the maker was under no obligation to pay it at any other place, and hence a refusal to pay upon presentment elsewhere would be no dishonor upon which the indorser could be charged. *Berkshire Bank* v. *Jones*, 6 Mass. 524; *Woodbridge* v. *Brigham*, 12 Mass. 405; *North Bank* v. *Abbot*, 13 Pick. 465; Daniel on Negotiable Instruments, § 644, and cases cited; Story on Promissory Notes, 7th ed. § 230, and cases cited.               *Petition granted.*

*Charles L. Steere & Ezra K. Parker*, for plaintiff.

*Andrew B. Patton*, for defendants.