## First National Bank v. Mammoth Blue Gem Coal Company, et al.

(Decided April 28, 1922.)

### Appeal from Whitley Circuit Court.

1.  Banks and Banking—Check in Payment of Debt of Corporation.—Endorser.—Where a check is made payable to an individual who is the president of a corporation but is intended to cover a debt owing the corporation, the corporation is the real payee; and where these facts are known to the bank upon which the check is drawn and the name of the corporation is written on the back of the check, such signing is not as an endorser by the corporation, but is made for the purpose of having the same transferred to its credit on the books of the bank.

2.  Banks and Banking—Knowledge of Account of Depositors.—Banks are required to know the state of the account of their depositors.

3.  Banks and Banking—Presentment and Payment of Checks.—After a check has been presented to the bank upon which it is drawn and the payee therein has been given credit therefor, the drawer thereof cannot stop payment so as to affect the rights of the payee. The payee's claim having already been paid, there was no consideration for an agreement between the payee and the bank that if the bank could not collect the claim against the drawer the payee should lose it.

4.  Appeal and Error—Directing Verdict—Instructions.—Where the plaintiff was entitled to a directed verdict under the evidence, it is unnecessary to consider the correctness of the instructions on an appeal by the defendant.

5.  Banks and Banking—Crediting Account of Depositor.—When a bank gives to one of its depositors credit by the amount of a check drawn on it by another depositor, in the absence or fraud or collusion, the act of crediting the depositing customer will be given the same effect as if the cash had been paid; it is a completed transaction, and if thereafter, even on the same day the bank officials ascertain they have made a mistake and the drawer did not in fact have the money on deposit to meet the check it will not affect the rights of the depositing customer.

6.  Banks and Banking—Crediting Account of Depositor.—When one customer of a bank presents to it a check drawn on it by another customer and the depositing customer is given credit by that amount on the books of the institution, or is given what amounts to a certificate of deposit, the depositing customer has the right to rely upon the fact that he has that amount of money on deposit; and if there is any question of loss as between the depositing customer and the bank the latter must bear the loss.

J. B. SNYDER, H. C. GILLIS and B. B. SNYDER for appellant.

TYE & SILER for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

In December, 1918, H. C. Keeton was doing business at Williamsburg, Kentucky, in the name of the H. C. Keeton Coal Sales Company and for a few months prior to that had done quite an extensive business, amounting to something over a hundred thousand dollars in six or seven months.

During the same period appellee, Mammoth Blue Gem Coal Company, a Kentucky corporation, was operating a coal mine near the same place and doing a general coal mining business.

Prior to the 16th of December, 1918, the H. C. Keeton Coal Sales Company had become indebted to the appellee, Mammoth Blue Gem Coal Company, and on that day the H. C. Keeton Coal Sales Company executed and delivered to Sol L. Smith, the president and chief stockholder of the Mammoth Blue Gem Coal Company, a check for $1,-200.00 on the First National Bank of Williamsburg, at which institution both the drawer and the appellee at the time did business and had accounts.

Smith left home on business and placed the check with his wife, together with some smaller ones, to be deposited by her the next day in the First National Bank to the credit of Mammoth Blue Gem Coal Company.

On the next day Mrs. Smith went to the bank and in the presence of the cashier wrote the name of the Mammoth Blue Gem Coal Company on the back of the check drawn upon that institution by the H. C. Keeton Coal Sales Company, whereupon the cashier gave to Mrs. Smith a postcard used by the bank in notifying its customers by mail of the receipt of deposits, which postcard was addressed to ''Mammoth Blue Gem Coal Company'' on one side and the other side is as follows:

''FIRST NATIONAL BANK

Williamsburg, Ky., 12/17, 1918.

Yours of the —— inst., received with stated enclosures.

We Enter for Collection.        We Credit Your Account.
$1,200.00
12.00

Not responsible for lack of protest at points where there is no bank.

All items (except checks on us) are credited subject to payment.

C. S. WILSON, Cashier.''

Mrs. Smith accepted this paper for the company and it is the basis of this action.

Thereafter, on the same day, it was ascertained by the officers of the bank that the H. C. Keeton Coal Sales Company did not have the money on deposit to meet this twelve hundred dollar check, and they so notified that company and Mrs. Smith and declined thereafter to give the appellee credit by that amount.

C. H. Keeton, the father of H. C. Keeton, was at the time of this transaction the assistant cashier and book-keeper of appellant bank, and it is its claim that in the signing of the postcard by the cashier showing the giving of credit to appellee for the twelve hundred dollars, the bank and its cashier were misled by the fraudulent mis-representation of the bookkeeper, C. H. Keeton, into be-lieving that the account of the H. C. Keeton Coal Sales Company had a sufficient balance on deposit at the time to meet the check. But there is nothing in the pleadings or in the evidence to justify the assumption that the ap-pellee, Mammoth Blue Gem Coal Company, or any of its officers or agents, including Mrs. Smith, had anything whatsoever to do with any representation of either of the Keetons to the bank.

This is an action by Mammoth Blue Gem Coal Com-pany against the bank for the twelve hundred dollars. The first paragraph of the answer is a denial that the plaintiff received the check for twelve hundred dollars drawn on the defendant bank by the H. C. Keeton Coal Sales Company in payment for coal theretofore sold or delivered to it, or that plaintiff endorsed its name on the back of any such check or that after having so endorsed same it deposited the same with the bank or that the bank received the same or credited the account of the plaintiff with that amount.

The second paragraph alleges that the check referred to in the plaintiff's petition was made payable to Sol L. Smith, who was the only payee therein, and that said Smith did not, at any time, endorse the check and his name was not endorsed thereon and did not appear thereon as the payee, but that the plaintiff did endorse said check and did place its signature upon the back of same otherwise than as the maker, drawer or acceptor thereof and did endorse the same in blank before delivery to the bank and thereby became liable to the payee therein and to all subsequent parties, and therefore that if de-fendant has incurred any liability or shall thereafter in-cur any loss or injury by reason of these facts then the plaintiff, as an endorser on the check, is liable to defend-ant for any such liability, loss or injury, and pleads these facts as a counterclaim against the plaintiff by way of indemnity against any such liability.

In the third paragraph it is alleged by the defendant that at the time the check was presented to defendant the drawer did not have any money on deposit in the defend-

ant bank and its account therein was overdrawn and defendant did not have in its possession or under its control any money belonging to the H. C. Keeton Coal Sales Company or with which it was authorized to pay said check and that defendant bank included said check on a copy of a deposit slip delivered to plaintiff by mistake and oversight and at which time the name of the payee therein, Sol L. Smith, was not endorsed thereon and was not authorized to give the plaintiff credit therefor or to charge the same to the maker thereof; and defendant notified plaintiffs of such mistake and oversight and said purported credit was withdrawn before the plaintiff had acted upon the same or had drawn any checks upon the faith thereof.

The fourth paragraph alleges that after defendant had by mistake and oversight included the check in a deposit slip delivered to plaintiff and before the institution of the action and before plaintiff had acted upon or suffered any injury by reason of the purported credit or deposit, the maker of the check, the H. C. Keeton Coal Sales Company, stopped payment thereon and notified defendant not to pay same, and thereupon the plaintiff, by its president, agreed with the defendant that if it could not collect the amount of said check from the maker the plaintiff would have to lose the same.

By an amended petition wherein Sol L. Smith was made a joint plaintiff the allegation in the original petition that Mammoth Blue Gem Coal Company was the payee in the check was withdrawn and it is alleged that Sol L. Smith was the payee in the check, the said Sol L. Smith at the time being the president of the Mammoth Blue Gem Coal Company, and that the check was issued by the H. C. Keeton Coal Sales Company to cover an indebtedness to the Mammoth Blue Gem Coal Company, and Sol L. Smith had no interest whatever therein or thereto, and Smith ratifies the act of the Mammoth Blue Gem Coal Company in signing its name on the back of the check and collecting the amount thereof from the defendant. The court, upon motion, struck out paragraphs two and three of the answer and refused to strike out paragraph four and overruled a demurrer to that paragraph.

Manifestly, the court did not err in striking out paragraph two of the answer. That paragraph sought to make appellee liable as an endorser on the check, but this is not an action on the check nor an action by the appellee

as an endorser of the check. On the contrary, it is an action by the appellee to recover the twelve hundred dollars which represent the actual credit given to it by the bank because of the deposit of the check.

And even if this paragraph presented a good defense, the evidence shows without contradiction that appellee was in fact the real payee in the check which had by oversight been executed to its president, and the signing of appellee's name thereon was not as an endorser, but as the real payee in the note for the purpose of having the same transferred to its credit.

It is likewise clear that the action of the court in striking out paragraph three was proper. The officers of the bank knew that Sol L. Smith, the nominal payee in the check, was the president of the Mammoth Blue Gem Coal Company and they knew when that check was presented by the wife of the president and she requested them to put it to the credit of the coal company, and they did put it to that company's credit, that the transaction was with the coal company; they knew, as the evidence shows, that Mrs. Smith, the wife of the president, had been in the habit of transacting business for the company of which her husband was president and she signed the name of that company on the back of the check simultaneously with its deposit, and when they gave to her in the name of the Mammoth Blue Gem Coal Company a certificate of deposit embracing a check drawn upon that identical institution by one of its depositors, it matters not that they were mistaken about that depositor having the money on hand to pay the check, for the law requires of banks and bank officials that they shall know the state of the account of their customers.

But even if this paragraph had presented a good defense the evidence, without contradiction, on the trial disclosed that Smith was only the nominal payee and that the check was given to pay a claim due to the Mammoth Blue Gem Coal Company.

When the court came to submit its instructions it failed to embrace therein the defense set up in paragraph four of the answer. Conceding, for the sake of argument, that that paragraph presented a good defense, on the trial the evidence showed without contradiction that the appellee had been given credit at the bank for the amount of the twelve hundred dollar check long before the H. C. Keeton Coal Sales Company undertook in any way, if it ever did, to stop payment on the check; and it

is clear that the drawer of the check could not, at that time, have stopped its payment so as to affect the rights of the appellee. Its rights were then already fixed—its claim against the Keeton Company had been paid—and there was no consideration for its alleged agreement with the bank.

The jury found a verdict for the plaintiff, and in our view of the law of the case, it is unnecessary to consider the correctness of the instructions given. The uncontradicted evidence, as we have stated, shows that both the drawer and the actual payee in the check were customers of appellant bank and each had accounts there; that the H. C. Keeton Coal Sales Company drew its check on appellant bank in favor of appellee for twelve hundred dollars and that bank gave to appellee what is equivalent to a certificate of deposit for that amount, thereby, in effect, paying to appellee the amount of a check drawn against it by one of its customers, and for that reason the directed verdict asked for by appellee at the close of all the evidence should have been given.

When a bank gives to one of its depositors credit by a check drawn in favor of that depositor by another depositor on the same institution, in the absence of fraud or collusion, the act of crediting to the depositing customer will be given the same effect as if the actual cash had been paid to him; and if thereafter, even though it be on the same day, the bank officials ascertain they have made a mistake and the drawer did not in fact have the money on deposit to meet the check, it will not affect the rights of the depositing customer. For, under these circumstances, it is a completed transaction, as much so as if the actual money in cash had been paid to the customer over the counter.

The necessities of commerce require that there shall be the utmost good faith between a banking institution and its customers, and when one customer of a bank presents to it a check drawn on it by another customer and is given credit by that amount on the books of the institution or is given what amounts to a certificate of deposit for that amount, the transaction is closed, and the depositing customer has the right to rely upon the fact that he has that amount of money on deposit in that institution. And if there is any question of loss as between the depositing customer and the bank, the latter must bear that loss because it brought about the loss by

its own mistake or oversight. Robinson & Company v. Bank of Pikeville, 146 Ky. 538; First National Bank v. Burkhardt, 100 U. S. 686; Oddie v. National City Bank, 45 N. Y. 735 (6 Am. Rep. 160); Wasson v. Lamb, 120 Ind. 514 (16 Am. St. Rep. 342); City National Bank v. Burnes, 68 Ala. 267 (44 Am. Rep. 138); American Exchange National Bank v. Gregg, 138 Ill. 596 (32 Am. St. Rep. 171); 3 R. C. L. 526.

Judgment affirmed.