## Bank of Commerce v. Reis et al.

(Decided Feb. 2, 1934.)

(Rehearing Denied April 20, 1934.)

FRANK S. GINOCCHIO for appellant.

JOHN J. WINN for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

Isador Levy, on May 1, 1931, gave to E. T. Reis his check for $1,338.41, drawn on the Bank of Commerce, Lexington, Ky. Reis on that day deposited the check in the Montgomery National Bank at Mt. Sterling, and was credited by the bank for the amount. The check passed through the hands of several banks, but was finally presented by the Cincinnati branch of the Federal Reserve Bank of Cleveland on May 6th. When the Bank of Commerce opened that morning, Levy had to his credit a balance of $424.70. After this a check came in drawn by him on his account for $344.87, leaving a balance of only $79.83. Levy deposited a check for $205.13, also a draft for $1,084, making his total $1,368.96. The bookkeeper called up Levy and told him that his account was overdrawn, and to meet the overdraft he then went to the bank and made a deposit of $25. The bank then paid the check for $1,338.41, by charging the amount to Levy's account, and at the close of the business that day sent the Cincinnati bank a check for the amount.

Levy owed a note to the bank for $1,500, which was due on May 4th, but nothing was said about it on May 6th, when the above transactions took place. On May 7th, the poultry market had broken. Levy was in the poultry business and before banking hours he came down to the bank and told the president that he was broken. Thereupon the president had the bookkeeper to credit Levy's account with $1,338.41, and charged the account with the amount of the note. The check which the Lexington bank had sent to the Cincinnati bank had not then reached the Cincinnati bank and he notified the Cincinnati bank that the check was dishonored and to hold the money. The Cincinnati bank held the money and returned it to the Lexington bank. That bank then protested the check and returned it "protested." This action was brought

by Reis to recover against the bank on the check and at the conclusion of the evidence for the plaintiff and the defendant, the circuit court peremptorily instructed the jury to find for the plaintiff. The bank appeals.

There is no dispute as to the facts. The only question presented by counsel is as to liability of the bank on the facts: In Robinson & Co. v. Bank of Pikeville, 146 Ky. 528, 142 S. W. 1065, 1067, 37 L. R. A. (N. S.) 1186, the bank, without knowledge of the fact that the check was forged, accepted it and placed the amount to the credit of a depositor, who drew checks against the fund. It was held that the bank could not refuse to pay the checks so drawn on the ground that the check it had received was a forgery. The court said:

"The commercial interests of the country demand that banks should be held to a high degree of care in the conduct of their business with customers to whom they give credit they would not otherwise be able to obtain. And when a bank receives, not for collection, but as so much money, a check, and places the amount to the credit of a customer, it thereby assumes liability for this amount to all persons to whom the customer may give checks. And we think the principle of law is or should be well settled, that, when a bank by its course of dealing with a customer authorizes him to issue checks on it, it will be estopped to say, after such checks have come in good faith into the hands of innocent holders, that the customer did not in fact have any money to his credit, and for this reason decline to pay the checks. Especially should this principle obtain when to permit the bank to make this defense would cause a bona fide holder of the customer's check to lose the amount of it."

In First National Bank v. Sidebottom, 147 Ky. 690, 145 S. W. 404, 405, the bank, which had paid a checks, sought to recover the amount so paid from the holder on the ground that it was paid by mistake. Refusing a recovery, the court said:

"Can a bank that in the ordinary course of business pays a check given by its customer on his account recover the amount so paid from the

person presenting the checks, if it subsequently develps that the customer did not when the check was paid have to his credit funds to pay it, or, if it is paid under the mistaken belief on the part of the bank that the customer had funds to pay it? This question was before us in the case of Robinson & Co. v. Bank of Pikeville, 146 Ky. 538, 142 S. W. 1065 [37 L. R. A. (N. S). 1186], and it was there ruled that, when a bank pays a check given by its customer, it cannot recover from the party to whom the check was paid the amount of it. The authorities supporting this principle are so fully stated in the Bank of Pikeville Case that it does not seem necessary to repeat them here.''

To the same effect see First Nat. Bank v. Mammoth Blue Gem Coal Co., 194 Ky. 586, 240 S. W. 78; Kentucky Title Sav. Bank & Trust Co. v. Dunavan, 205 Ky. 801, 266 S. W. 667.

The general rule on the subject is thus stated in 7 C. J. p. 680, sec. 408:

"When a drawee bank has paid a depositor's check by remitting the amount by draft in a letter mailed to the bank from which the check was received and afterward learns of the depositor's insolvency or the insufficiency of his deposit to cover his check, this is usually regarded as in legal effect a delivery to the sending bank, and beyond the sender's rightful recall."

Appellant relies on section 3720b-132 Kentucky Statutes, which provides that the acceptance of a bill must be in writing and signed by the drawee, insisting that as the acceptance here was not in writing signed by the bank, the bank is not liable; but when the bank, on which a check is drawn, pays the check and charges it to the account of the depositor, the transaction is closed; the check having been paid is no longer a subsisting obligation but is discharged. This question was fully considered in Louisa National Bank v. Kentucky National Bank, 239 Ky. 302, 39 S. W. (2d) 497.

Judgment affirmed.