**First National Bank & Trust Co. of Lexington, Ky., et al. v. First National Bank in Hazard's Receiver.**

(Decided Oct. 4, 1935.)

WILSON & HARBISON for appellants.

JOSEPH S. BOTTS and ALLEN, BOTTS & DUNCAN for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Fayette circuit court sitting in equity. On the morning of November 16, 1928, the Perry Bank & Trust Company of Hazard (hereinafter called the Perry Bank) was taken over by the state banking commissioner as insolvent. The last day that it remained open (November 15, 1928) was pay day for the Louisville & Nashville Railroad Company employees, a number of whom resided in Hazard. The railroad company paid its employees by drafts drawn on its treasurer in Louisville, Ky., by its comptroller, countersigned by another official. Sixty-four of these drafts are involved in this suit, aggregating, in amount, $6,052.74. All of them are in the same form, and each bears the notation on its face: "When properly endorsed, this draft may be collected through any of the banks named on the back, or it will be paid by any agent having sufficient funds of the company in his hands." Among the 25 banks named on the back of each draft is appellant's predecessor, the Phœnix National Bank & Trust Company of Lexington, Ky. (hereinafter called the Phœnix Bank). These drafts were indorsed and deposited in the Perry Bank on the 15th of November, 1928. Some of the employees deposited the full amount of their drafts, while others left only a portion on deposit and took the balance in cash, or, in one instance, in the form of a cashier's check.

Shortly after noon on November 15, 1928, the president of the Perry Bank advised the appellee, the First National Bank in Hazard (hereinafter called the First National Bank), that the Perry Bank had cashed so many out-of-town checks that it had run short of money.

He requested the First National Bank to lend it $7,000. The First National Bank refused to make a loan, but agreed to purchase, and did purchase, the railroad company drafts here involved at their face value. The same afternoon the First National Bank forwarded these drafts by mail to the Phœnix Bank for payment. It maintained an account in the Phœnix Bank, as did the railroad company.

It being rumored, evidently after banking hours, on the evening of November 15, 1928, that the Perry Bank was insolvent and would not open its doors on the following morning, the employees affected prepared a petition addressed to the railroad company's treasurer at Louisville, requesting him to stop payment on these instruments.

The drafts were received by the Phœnix Bank on the morning of November 16, 1928. As was its custom in handling items of this character, that bank debited the account of the railroad company to the amount of the drafts and credited a like amount to the account of the First National Bank. That same afternoon the Phœnix Bank stamped the drafts "paid" and forwarded them by express to the railroad company at Louisville. About 4:45 p. m. on November 16, 1928, after the drafts had already been sent to Louisville, the Phœnix Bank received a telegram from the treasurer of the railroad company stating that, until further advised, the railroad company would decline payment of the drafts taken by the Perry Bank and transferred to the First National Bank. However, no attempt was then made to recharge the account of the First National Bank or recredit the account of the railroad company. On November 21, 1928, the Phœnix Bank, by letter, advised the First National Bank that the railroad company proposed to stop payment on these items. After exchanging some correspondence with the Phœnix Bank and with the railroad company, the First National Bank requested that the drafts be returned to it through regular banking channels, in order that it might get its account settled. Its account at the Phœnix Bank was recharged on December 4, 1928, in the amount of the drafts, and the railroad company's account was recredited. After receipt of the drafts, the First National Bank learned for the first time the actual manner in which the transaction had been handled at the

Phœnix Bank with reference to crediting its account and charging the account of the railroad company on the day that the drafts were received. Conceiving that this action on the part of the Phœnix Bank constituted a final payment of the drafts, thereby precluding the railroad company from stopping payment thereon, the First National Bank, after demanding that its account be recredited, filed this suit against the Phœnix Bank asking judgment for the amount with which its account had been recharged, together with interest from the date of the demand until paid. The chancellor gave judgment for the full amount prayed.

Appellant contends that the drafts were not finally paid at the Phœnix Bank, but that it was simply an agent for collection, and gave a revocable credit to the account of the First National Bank, conditioned upon the payment of the draft by the railroad company on presentation to it in Louisville. It argues that the notation on the drafts that they might be "collected through" any of the banks named on the reverse side thereof did not mean that the drafts were *payable* at the institutions designated. There could be no reason for designating certain banks through which the drafts were collectible unless the railroad company meant to designate them as alternative places for presentment for payment, in the same manner, as, in the next clause, it provided for payment by any agent having sufficient funds in his possession. Bartholomew v. First National Bank, 18 Wash. 683, 52 P. 239. No presentment for acceptance was required, since both drawer and drawee were the same person. It seems clear that dishonor of one of the drafts by one of the designated banks would have required protest to fix the liability of indorsers equally as much as if presentment were made directly to the treasurer of the railroad company. The fact that the holder was given an option to make presentment for payment at more than one place does not seem to us to make any difference. Hazard v. Spencer, 17 R. I. 561, 23 A. 729; Langley v. Palmer, 30 Me. 467, 50 Am. Dec. 634; North Bank v. Abbot, 13 Pick. (Mass.) 465, 25 Am. Dec. 334; Kerr v, Dyer, 116 Me. 403, 102 A. 178. In the cases just cited, the items presented for payment were made payable at "any bank" in a particular community, and the courts, in those cases, held that presentment for payment could be made at any bank in the community. This seems both

logical and sound, although there are cases to the contrary. It seems even a stronger proposition where the instrument expressly names the institutions at or through which it is payable, and it is admitted that the drawer had a deposit in the bank concerned sufficient to cover the drafts. While in those cases, the instruments involved were promissory notes, where, in a bill, drawer and drawee are the same person, the holder may treat the instrument, at his option, either as a bill of exchange or as a promissory note. Ky. Stats. sec. 3720b-130. It follows that the drafts here in question were *payable* at the Phœnix Bank and that presentment for payment at Louisville was not required. Even if it be considered as a forthright direction to the Phœnix Bank to stop payment, which it was not, the telegram from the railroad company was not received until after the items had been finally paid, and undoubtedly after banking hours on the day of payment, and, furthermore, no effort was made by the Phœnix Bank actually to recharge the items until more than two weeks thereafter. Acts 1930, chap. 13, secs. 7 and 3, Ky. Stats. 1933, Supplement, secs. 3720b-69a-6 and 3720b-69a-2; First National Bank v. Mammoth Blue Gem Coal Co., 194 Ky. 580, 240 S. W. 78; Bank of Commrece v. Reis, 253 Ky. 648, 69 S. W. (2d) 754.

Appellant contends, however, that conceding arguendo that the drafts were finally paid by the Phœnix Bank, the direction given by the First National Bank to return the drafts to it, upon advice that payment had been stopped, and the actual return and acceptance of the items amounted to an "account stated" between the two banks and authorized the recrediting of the account of the railroad company and the recharging of the account of the First National Bank upon the return of the drafts. Appellant says that the First National Bank cannot now turn around and insist on a recrediting of its account, and, further, that it is not a holder in due course of the instruments. It is established in the record that the First National Bank did not know at the time it directed the return of the drafts that they had been paid. It is not contended that the railroad company has in the meantime withdrawn its account from the Phœnix Bank or that the bank has in any way altered its position in such manner as to work an estoppel against the First National Bank. Indeed, it may well be doubted if an estoppel would arise even if the

Phœnix Bank had altered its position in view of its failure to disclose the fact of payment. Its liability to appellant on the original credit, of which appellant was not advised, is certainly not altered by the subsequent steps here taken. Cohen v. First National Bank, 22 Ariz. 394, 198 P. 122, 15 A. L. R. 701, cited with approval in National Deposit Bank v. Ohio Oil Co., 250 Ky. 288, 62 S. W. (2d) 1048. The chancellor rejected the contention that the First National Bank was not a holder in due course of the instruments. We think his conclusion is correct.

Judgment affirmed.