CULPEPPER, Judge.
Plaintiffs sued for payment of a draft in the sum of $32,324.30 drawn for the purchase of plaintiff’s rice crop. Defendants are the bank, through which the draft was payable, and the bank’s president. Plaintiffs dismissed their suit against the president. Judgment on the merits was rendered for the defendant bank. Plaintiffs appealed.
The substantial issues are: (1) Is the defendant bank liable under LSA-R.S. 7 :- 136-137 for failure to return the draft to the holder within 24 hours either accepted or nonaccepted? (2) At the time the defendant bank first received the draft as a cash item, were there sufficient funds in the drawee’s account for payment? (3) Is the defendant bank liable for the failure of its president to warn plaintiffs of the financial difficulties of the drawee, or for the breach of any other duty owed by the bank to plaintiff?
The facts show that in 1968 the plaintiff Bollich raised rice on land owned by the plaintiff Frey. They shared the crop one-half to each. Most of the rice was sold to Rex Rice Company, Inc. of Eunice, Louisiana. On March 10, 1969, Mr. Jack Smith, president of Rex Rice Company, Inc., drew four drafts in payment for plaintiffs’ rice. The draft in question here was to pay money borrowed by plaintiffs to make the crop and reads as follows:
"$32,324.30 3-10-1969
"At Sight Pay to the order of Commodity Credit Corporation Thirty Two Thousand, Twenty Four & 30/100 Dollars Value received, as per documents attached . Grader's Report No. 3856 Purchase No. 1570
TO: REX RICE COMPANY, INC. Eunice, Louisiana
THROUGH: LOUISIANA BANK & TRUST CO. Crowley, Louisiana
Jack Smith"
Mr. Bollich testified that he took the draft to his home and within the next day or two his wife delivered it to the office of the United States Department of Agriculture in Opelousas. It then went through government channels to the Federal Reserve Bank branch in New Orleans. That bank first forwarded the draft as a “Cash Item” to the defendant, Louisiana Bank & Trust Company, of Crowley, Loui *276 siana, who received it on Monday, March 17, 1969. On that same date, March 17, 1969, the defendant bank returned the draft to the Federal Reserve Bank in New Orleans with a telegram which stated:
“RETURNING DRAFT AMOUNT 32324.30 DRAWN REX RICE CO NOT CASH ITEM ENTER FOR COLLECTION YOURS OF 14 END 18-4”
On Wednesday, March 19, 1969, the defendant bank again received the draft from the Federal Reserve Bank, this time marked “For Collection.” On that same date, March 19, 1969, the defendant bank mailed the draft back to the Federal Reserve Bank in New Orleans with a telegram stating:
“PRESENTED TO DRAWER BUT UNABLE TO EFFECT COLLECTION”
CONTENTION THAT DRAFT HELD MORE THAN 24 HOURS IN VIOLATION OF LSA-R.S. 136-137
Plaintiffs contend the draft was held by the defendant bank for more than 24 hours in violation of LSA-R.S. 7:136-137 which read as follows:
“The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill; but the acceptance if given dates as of the day of presentation.
“Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within' such other period as the holder may allow, to return the bill accepted or non-accepted to the holder, he will be deemed to have accepted the same.”
The defendant bank points out that under these statutory provisions the 24-hour requirement applies only to a “drawee”. The draft in question here is payable to Commodity Credit Corporation, signed by Jack R. Smith as drawer and is directed to Rex Rice Company, Inc., as drawee, “Through Louisiana Bank & Trust Company.” Thus, the defendant bank is not the drawee.
Although the defendant bank is not the drawee, the next question is whether its status is equivalent to that of a drawee under LSA-R.S. 7:87 which reads as follows :
“Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon.”
Under Section 87, if the draft in question is made payable “at” the defendant bank, it is equivalent to an order to the bank to pay the draft for the account of Rex Rice Company, Inc., and the 24-hour rule applies even though the bank is not the drawee. We find no Louisiana cases construing Section 87, but decisions in other states under this same provision of the Uniform Negotiable Instruments Act support this construction. See First National Bank & Trust Company v. First National Bank, 260 Ky. 581, 86 S.W.2d 325 (1935); Mt. Vernon National Bank v. Canby State Bank, et al., Or., 276 P. 262; and other cases found in the annotation in 5 Uniform Laws Annotated 399, et seq.
The defendant bank argues that Section 87 has no application here because the draft in question was addressed to the drawee “through” the bank rather than “at” the bank. No case is cited which supports such a distinction, and we are unable to agree with the bank’s position. Whether an instrument is payable “at a bank” or “through a bank” makes no difference in the rights or duties of the bank under the statute. Both terms merely designate the bank where the instrument is to be paid. We cannot follow defendant’s argument that the term “through a bank” has the additional meaning that the instrument is to be sent to the bank only for collection and not as a cash item. Mr. Orgeron, president of the defendant bank, explained that in banking procedures a “cash item” is one which may be paid without presentment to *277 the drawer or drawee and to which the 24-hour rule applies. The most common example of this is an ordinary check. A collection item is one which is delivered to the bank for collection from the drawer or drawee when possible or under certain conditions, and to which the 24-hour rule does not apply.
We conclude that this draft was payable “at a bank” within the meaning of Section 87, and is therefore the equivalent of an order to the bank to pay the draft. It is therefore unnecessary for us to consider plaintiffs’ further arguments that under LSA-R.S. 7:130 the drawer and the drawee are the same person, since Smith actually signed the draft for Rex, and the draft is therefore the equivalent of a check.
The next question is whether the bank refused “within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or non-accepted to the holder,” as required by LSA-R.S. 7:137. The question here concerns the events of Monday, March 17, 1969, when the defendant bank first received the draft from the Federal Reserve Bank in New Orleans as a “cash item”. On that same date, the defendant bank returned the draft to the Federal Reserve Bank with the telegram stating: “Returning Draft Amount $32,324.30 Drawn Rex Rice Company Not Cash Item Enter For Collection”.
Plaintiffs contend that the holder of the draft, Federal Reserve Bank in New Orleans, had a perfect right to forward it to the defendant bank as a cash item which did not require presentment to the drawee, and that the defendant bank was required to expressly accept or reject the draft. Plaintiffs say the defendant bank had no right to simply return the draft with the suggestion that it be re-entered for collection, and that by doing so the defendant bank is deemed to have accepted the draft.
The pertinent statutory provisions are as follows:
LSA-R.S. 7:132.
“The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promises by any other means than the payment of money. ******
§ 149.
“A bill is dishonored by non-acceptance:
“(1) When it is duly presented for acceptance and such an acceptance as is prescribed by this Chapter is refused or cannot be obtained; or
(2) When presentment for acceptance is excused and the bill is not accepted.
§ iso.
“Where a bill is duly presented for acceptance and is not accepted within the prescribed time, the person presenting it must treat the bill as dishonored by non-acceptance or he loses the right of recourse against the drawer and indors-ers.”
Under these statutory provisions the acceptance of a bill must be in writing and signed by the drawee, but there is no requirement that a dishonor by nonacceptance be expressed in writing. Under Section 149, a bill is dishonored “When it is duly presented for acceptance and such an acceptance as is prescribed by this Chapter is refused or cannot be obtained”. Also, Section 150 provides “Where a bill is duly presented for acceptance and is not accepted within the prescribed time, the person presenting it must treat the bill as dishonored by non-acceptance.” Thus, in the present case the mere-return of the draft constituted a dishonor by nonacceptance, and since the draft was returned within 24 hours after its receipt as a cash item on March 17, 1969, there was a compliance with Section 137.
Of course, when the draft was received the second time by the defendant *278 bank on Wednesday, March 19, .1969, it was received “for collection” which means that the holder allowed a reasonable time for collection and the 24-hour requirement of Section 137 did not apply. Furthermore, even though the draft was received on March 19, 1969 as a collection item and not a cash item, the defendant bank in fact returned the draft within 24 hours.
Plaintiffs cite First National Bank of Winnfield v. Citizens Bank of Campti, 163 La. 919, 113 So. 147 (1927) as authority for the proposition that under Section 137 the drawee must expressly accept or reject the bill within the 24-hour period, and that the mere return of the instrument without express dishonor will be deemed an acceptance. That is a landmark case in our jurisprudence construing Section 137, but it does not stand for the contention urged by plaintiffs. In that case a tile manufacturing company drew a draft for $650 on the Perfection Curing Company for a carload of tile shipped to Campti, Louisiana. The draft, with the bill of lading attached, was forwarded by the drawer to the First National Bank of Winnfield for collection. At the request of an agent for the Perfection Curing Company, the First National Bank paid the draft, released to Perfection the bill of lading, and accepted from Perfection a sight draft for $650 drawn by Perfection on the Citizens Bank of Campti. This latter draft was received by the Bank of Campti on September 28, 1920, and was held by that bank until October 11, 1920 without being accepted or rejected, and was then returned to First National Bank of Winnfield. The court held under Act 64 of 1904, Section 137 (the source of our present LSA-R.S. 7:137) that the drawee bank, Citizens Bank of Campti, held Perfection’s draft for more than 24 hours and was therefore presumed to have accepted it. Actually, the substantial issue in the case was whether the 24-hour period commenced with time of delivery to the drawee or from the time of a further demand by the holder for payment. The court held the 24 hours commences with delivery to the drawee and the case is a landmark decision for this principle.
Plaintiffs also make an argument on the facts as to the applicability of Section 137. They say that since the draft shows it was mailed from the Federal Reserve Bank in New Orleans on Friday, March 14, 1969, it must have been delivered to the defendant bank on the next day, Saturday, March 15, 1969, rather than March 17, 1969, and hence there was no return of the draft within 24 hours. There is no evidence to support this contention. The bank’s record and the testimony of the employees who handled these accounts show clearly that the first delivery of the draft to the defendant bank was on March 17, 1969.
We conclude on both the law and the facts that the defendant bank is not liable under LSA-R.S. 7:136-137.
CONTENTION THAT ON THE DATE THE DRAFT WAS RECEIVED AS A CASH ITEM ON MARCH 17, 1969, THERE WERE SUFFICIENT FUNDS IN THE DRAWEE’S ACCOUNT TO PAY THE DRAFT, AND IT' SHOULD HAVE BEEN PAID
Plaintiffs argue that when the defendant bank first received the draft as a cash item on March 17, 1969, there were sufficient funds on deposit in the account of Rex Rice Company, Inc. and the draft should have been paid. There is some question as to whether the Federal Reserve Bank should have first forwarded the draft to the defendant bank as a cash item or a collection item, either because of certain regulations of the Federal Reserve Bank or the prior course of dealing between Rex Rice Company and the defendant bank. Mr. Orgeron says that due to certain regulations which are not made clear in the record, this draft should not have been forwarded as a cash item but, instead, should have been delivered as a collection item. Nevertheless, even assuming that when the defendant bank first re *279 ceived this draft on March 17, 1969 it should have treated the instrument as a cash item, the record shows clearly that on March 17 there were not sufficient funds in the account of the drawee, Rex Rice Company, Inc., to pay it. The draft was in the sum of $32,324.30. A copy of the bank statements of Rex Rice Company, Inc. (Plaintiffs’ exhibit 8 at page 49) shows that at the end of business on Friday, March 14, 1969, there was a balance of $4,776.54 in the Rex account. On Monday, March 17, 1969, the deposits totaled $20,110.18 and the withdrawals totaled $20,843.68, leaving a balance of $4,043.04 at the end of the day on March 17. At no time on March 17 were there sufficient funds in the Rex account to pay the draft. The defendant bank therefore had the right to return it on that date nonaccepted.
When the draft was received the second time by the defendant bank on March 19, 1969, it was delivered “For Collection”. Even assuming for the sake of argument that the defendant bank should'have treated the draft as a cash item on this second occasion, the bank statement of Rex Rice Company, Inc. shows there were not sufficient funds in the account to pay the draft, and it was returned the same day.
CONTENTION THAT DEFENDANT BANK IS LIABLE FOR BREACH OF A DUTY TO WARN PLAINTIFFS THAT REX RICE COMPANY, INC. WAS IN FINANCIAL DIFFICULTY, OR FOR THE BREACH OF SOME OTHER DUTY
The relevant facts show that Rex Rice Company, Inc. was in the business of buying, drying and milling rice and had maintained a large account with the defendant bank for approximately seven years. Customarily, Mr. Jack Smith, president of Rex, paid for rice which he bought by drawing a draft, similar to the one in the present case, addressed to Rex Rice Company, Inc. as drawee and payable through the defendant bank. When these drafts were received by the bank it would contact Mr. Smith immediately and he would deposit sufficient funds in the Rex account on that same date to cover the drafts.
In the early part of 1969, there was a dock strike which prevented Rex from selling its cleaned rice to obtain funds with which to purchase uncleaned rice. Nevertheless, Mr. Smith continued to buy raw rice and financial difficulties ensued.
Mr. Orgeron testified that beginning in the early part of March, 1969, he knew that Rex was in financial difficulty since it was unable to pay some of the drafts for the purchase of rice. He admits that some of these drafts which should have been paid as cash items were held for more than 24 hours. The record shows that ultimately the defendant bank had to pay approximately one-half million dollars in “stale drafts”.
However, Mr. Orgeron testified that although he knew some of the drafts were not being covered, he was persuaded by Mr. Jack Smith that Rex was still milling rice and would ultimately be able to make sufficient sales to cover all drafts. Finally, some time during the week preceding March 17, 1969, Mr. Orgeron gave Smith a deadline of March 19, 1969 to cover the drafts. The deadline was not met, and the collapse of Rex and the difficulties of the bank ensued.
The plaintiff Frey testified that on or about the date he received the draft in question, March 10, 1969, he telephoned Mr. Orgeron and inquired about it. In their briefs, plaintiffs argue that on this occasion Mr. Orgeron in some way accepted or otherwise agreed to pay the draft, but the record does not support this contention. Even Mr. Frey did not testify that Orgeron said the draft would be paid. Mr. Orgeron testified that Frey did not even ask him about this particular draft, but simply asked a general question as to whether it was proper and customary to pay for rice with a draft. Orgeron says he told Frey it was a customary method.
*280 The evidence simply does not show the breach of any fiduciary duty by Mr. Orgeron, or the commission or omission of any act by him, or any other bank employee, which constituted negligence or the breach of any duty owed to plaintiffs.
Plaintiffs make an equitable argument that during the period of the Rex financial difficulties some farmers received payment of their drafts and that all of the “stale drafts” eventually had to be paid by the bank. In effect, plaintiffs say it was unfair that others should be paid while they were not. Nevertheless, we find that as to this particular draft the defendant bank complied with its statutory duty, and that there was no breach of any other duty owed by the bank to these plaintiffs.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.